■ Nassau Chapter, Civil Service Employees Association, Inc., Respondent, v County of Nassau, Appellant.—In an action arising out of an alleged breach of a collective bargaining agreement, defendant appeals from (1) a judgment of the Supreme Court, Nassau County, entered September 12, 1978, which directed that certain named county employees be forthwith placed in designated steps and grades of the Nassau County graded service salary plan and receive appropriate back pay and granted leave to plaintiff to make application to the court if the parties cannot agree upon the amounts of back salary to be paid, and (2) an amended judgment of the same court, entered May 29, 1979, which, in addition to decreeing the proper step and grade into which the affected employees were to be placed, determined the amount of back salary owed each employee. Appeal from the judgment dismissed, without costs or disbursements; it was superseded by the amended judgment. Amended judgment reversed, on the law, without costs or disbursements, judgment vacated, and complaint dismissed. Plaintiff, Nassau Chapter, Civil Service Employees Association, Inc. (CSEA), commenced this suit on behalf of approximately 29 employees of the Nassau County Department of Probation who, effective September 18, 1975, returned from provisional positions in higher grades to their lower grade permanent positions. This downgrading procedure was governed by the parties' 1973-1974 collective bargaining agreement (which agreement remained in effect at least into 1978 by reason of the parties' apparent inability to sooner conclude a successor agreement). The essence of the complaint is that the county violated the agreement by placing these employees into steps in grade which were lower than the steps they were entitled to attain under the contract. More particularly, schedule "E" of the collective bargaining agreement (actually an incorporation of the ordinance setting forth the graded salary plan) provides, in pertinent part: "Notwithstanding any other provision of this ordinance, when a provisional employee is returned to a permanent position in a lower salary grade, the employee shall receive the salary in the salary step corresponding to the number of years of service he would have had in the position to which he is being returned as if he had never left such position." It must also be noted that

while the affected employees were serving in their higher grade provisional positions, their permanent positions (as well as their provisional positions) were upgraded pursuant to another provision of schedule "E". Unlike the downgrading procedure, the upgrading procedure is based upon salary slotting, not years of service, and thus distorts any one-to-one correspondence between years of service and step in grade. The key to the dispute between the CSEA and the county is the effect, if any, to be accorded the interim upgrading of the employees' permanent positions in determining their proper step and year in grade upon return to their permanent positions. Essentially, the CSEA would compute the proper step and year in grade as if the permanent position had already been upgraded on the date of the employee's original permanent appointment, rather than years later. Thus, for example, if the employee would have had eight years of service in his permanent position had he never received a provisional promotion, the CSEA argues that he must receive salary credit for eight years in his permanent position as upgraded. The county, on the other hand, would apply the employee's service credit to his permanent position both before and after upgrading. Thus, it would determine the employee's salary just prior to the 1974 upgrading as if he had never left that permanent position, determine his new proper step and year in grade via salary slotting upon the regrading, and then carry forward such new step and year in grade to the present. Trial Term held in favor of the CSEA, finding that number of years of service is the controlling criteria. We reverse and dismiss the complaint. It is well settled that "a construction of a contract which produces unreasonable results should be avoided, if possible, and that a more reasonable construction should be sought *(Fleischman v. Furgueson,* 223 N. Y. 235, 241; Restatement, Contracts, § 236, subd. [a])" *(Chemung Canal Trust Co. v Montgomery Ward & Co.,* 4 AD2d 95, 102). As stated by the Court of Appeals in *Spencer v Childs* (1 NY2d 103, 106-107), quoting from the late Judge Learned Hand's "wise and trenchant observation" in *Cabell v Markham* (148 F2d 737, 739): "courts should be wary of making 'a fortress out of the dictionary', since there 'is no more likely way to misapprehend the meaning of language * * * than to read the words literally, forgetting the object which the document as a whole' seeks to achieve." The intent of the downgrading section is to ensure that a provisional employee returned to a permanent position in a lower grade is not penalized for the time spent in the provisional position. Thus, although the employee's actual years of permanent service will necessarily be less than his total service in the system at the time he reverts back to his permanent position, this provision guarantees that his higher grade provisional service will be credited to his permanent service. To the extent that the downgrading provision is ambiguous in the factual context of an interim upgrading, it must be construed to incorporate the effects of any interim upgrading. This is the more reasonable construction since, as the county contends, it places the reverting employee upon the same step and year in grade as other permanent employees of equal seniority in the same permanent grade. To accept the CSEA's argument is to give the returning employee a seniority and salary advantage over permanent employees of equal seniority who had never received provisional promotions. Such advantage would seem to be without justification under either the graded salary plan or civil service law in general, and the CSEA does not even attempt to set forth any reasoned justification for its interpretation of the downgrading provision. Indeed, the CSEA's interpretation appears to fly in the face of settled civil service principles of equal pay for equal work. Without belittling the "Notwith-

standing" phrase of the downgrading provision, it is abundantly clear that the crucial phrase is really the last one, "as if he had never left such position", and that both Trial Term and the CSEA erred in equating that "position" solely with the position as upgraded. If the employee had never left "such position" since his hiring, he would not have reached the higher grade until 1974 and his step and year in grade thereafter would not have corresponded exactly to his years of service. Therefore, the downgrading section must be read to incorporate the effects of any interim upgrading. Contrary to the CSEA's contention, our interpretation does not ignore the language as to "years of service". The returning employee's "salary step" will still correspond to the number of years of service he would have had in the position if he had never left it. It is just that the correspondence will not be one-for-one, due to the distortion created by the interim upgrading; but it will still be equal to that of all other permanent employees of equal seniority. The CSEA's reliance upon *Totero v Levitt* (41 NY2d 1002) is misplaced. In that case, the statutory standard of "years of service" was to be employed for placement in a newly created graded salary plan, i.e., initial slotting. At bar, we are dealing with an ongoing graded salary plan and the employee's own prior service therein. Lazer, J. P., Gibbons, Gulotta and Cohalan, JJ., concur.