**C.R. DANIELS, INC.,**
**Plaintiff/Counterdefendant,**

v.

**YAZOO MANUFACTURING COMPANY,**
**INC., Defendant/Counterclaimant.**

**Civ. A. No. J84–0602(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

June 27, 1986.

Robert P. Thompson, Gerald, Brand, Watters, Cox & Hemleben, Jackson, Miss., for plaintiff/counterdefendant.

Brad Sessum, Young, Scanlon & Sessums, Jackson, Miss., for defendant/counterclaimant.

## MEMORANDUM OPINION

TOM S. LEE, District Judge.

This cause came before the court for trial on the complaint of the plaintiff, C.R. Daniels, Inc. (Daniels), and the counterclaim of the defendant, Yazoo Manufacturing Company, Inc. (Yazoo). Based on the testimony of witnesses and the exhibits admitted at trial, the court makes the following findings of fact and conclusions of law.

In June 1981, Charles Silvernail, who was then vice president of Daniels, and James Kerr, who was at that time president of Yazoo, began negotiating an agreement whereby Daniels would design and manufacture grass catcher bags for "S" series lawn mowers to be manufactured by Yazoo. Daniels was to begin manufacture upon approval by Yazoo of a design and sample of the proposed bag. Although Kerr made it clear to Silvernail and his successor, Tom Stavinoha, that timing was critical because of the seasonal nature of Yazoo's business, he did not deliver an "S" series mower to Daniels until late November 1981. The bag design and sample were approved in December 1981 although frames for use with the bag were not approved until February 1982.[1]

The agreement between Daniels and Yazoo was reduced to writing in the form of a series of purchase orders issued by defendant and signed by Kerr, with each replacing earlier purchase orders.[2] The initial purchase order was issued on October 23, 1981, prior to final approval of the designs, so that Daniels could begin ordering raw materials. In the October 23 purchase order, Yazoo contracted for 20,000 bags and the evidence showed that Daniels thereafter purchased material to manufacture as

---

1. Final approval of the bags was dependent on approval of the frames since they were to be used together.

2. The evidence showed that this system was understood by both parties.

many bags. The bag order was altered by purchase order dated December 28, 1981 to reflect a change in price. The initial purchase order for frames was dated December 28, 1981 and ordered 10,500 frames. Subsequent purchase orders issued in April, May and June merely altered the delivery schedule [3] but did not change the total number of bags and frames ordered.[4]

After the initial shipment, Daniels, at the request of Yazoo, changed from bulk packages to individual boxes containing ten or sixteen bags to expedite shipment to Yazoo dealers. In the smaller packages, the chutes on the bags were flattened. On July 5, 1982, Yazoo issued a purchase order stating, "Do not ship anything else as we were forced to shut down by CPSC [Consumer Product Safety Commission] law effective 6/30/82. Will advise new shipping SKD [schedule] in September 82." As of July 5, 1982, 8368 grass bags and 4466 frames had been received by Yazoo.

Kerr testified that in June 1982, he began to see evidence of a problem with cracking chutes on the bags. He sent a damaged bag to Stavinoha who informed Kerr that, based on the presence of tire marks on the bag, Daniels had determined the problem to be caused by abuse.[5] Kerr also testified that he sent two other bags to Stavinoha in 1982 and 1983, apparently without a cover letter. Stavinoha denied receipt and Kerr offered neither physical proof that the bags were sent nor explanation for his failure to contact Stavinoha when no response was forthcoming.[6]

On July 19, 1982, Stavinoha met with Kerr to discuss delivery schedules. Kerr stated that he expected Yazoo to be exempted from the government regulations in September and that he would talk to Stavinoha at that time. According to the testimony of Stavinoha, Kerr did not indicate that future deliveries would not be accepted. When Stavinoha and Kerr talked in September, Kerr was unable to set a delivery date due to excess inventory although Yazoo had by then obtained an exemption from government regulations. Kerr and Stavinoha agreed to meet in December 1982 and Kerr again did not indicate that the remaining bags and frames would not be accepted. Throughout this time, Daniels continued to manufacture bags and frames. On October 14, 1982, Kerr sent to Daniels a photocopy of the July 5 purchase order with "cancelled" written on its face. Kerr offered no explanation at that time for the attempted cancellation. Stavinoha did not recall seeing this purchase order.

When the dispute regarding scheduling was not resolved by December 1982, Robert Parks, treasurer of Daniels, began handling the account. On December 29, Parks wrote Kerr asking for a delivery schedule. Kerr responded with a handwritten note on Parks' letter,[7] stating that the product was "not holding up in the field" and that the order had been cancelled. Kerr's note also stated that he would "try to use what you have when we can move out what we have,"[8] in spite of the fact that, according to his testimony, he was aware of a widespread problem with the bags by this time. Parks wrote back to Kerr, stating that the product was good and threatening suit if Yazoo did not comply with the contract.

---

3. No objection was made by either party regarding the delivery changes.

4. One purchase order did change the price of the frames to correspond with an agreement regarding painting.

5. At trial, Kerr testified that the tire marks were the result of his driving over the bag to test it. There was no evidence that he told Stavinoha of this.

6. Stavinoha testified that he did not learn of the cracked chute problem until August 1984, after this suit was filed.

7. Kerr testified that this was his usual business practice.

8. On the day following Kerr's response, Yazoo sent to Daniels a form letter thanking Daniels for his "Good Supply, Excellent Product, On Time Deliveries, Warranty Acceptance, and Engineering Expertise." Kerr explained that the letter was merely a form letter sent to all suppliers and the court places no significance on it.

Another Daniels official, Philip R. Amatucci, wrote Kerr on January 13, 1983, also requesting payment.

On February 7, 1983, Kerr wrote a lengthy letter to Parks and Amatucci, stating that product defects had been reported to Stavinoha. He suggested that Daniels "let [Kerr] move out in the sales area and work it out as the recession/Depression starts to ease up and the season begins." In this letter, Kerr also mentioned that $64.40 was due to Yazoo from Daniels for warranty claims and expressed a desire that this claim be handled as expeditiously as previous ones, although Yazoo offered no proof that previous warranty claims had been made or paid.[9] Parks responded on February 18 requesting information from Kerr regarding when a delivery schedule could be established but not mentioning the alleged defects. By handwritten notes dated March 7, Kerr suggested delivery of 1000 units in early April and later that month communicated to Daniels that Yazoo intended to sell 3800 bags and 2900 frames in 1983.

Daniels' attorney wrote Yazoo on May 18 demanding payment. Yazoo's counsel responded and notified Daniels for the first time of the specific complaints which Yazoo had with the bags and frames. Following initiation of this suit, Daniels' attorney was invited to view inspection of the bags in Yazoo's inventory. The inspection revealed that ninety-two percent of the bags had cracked chutes.[10] Until this time, Daniels had been unaware that the chutes were defective in a substantial number of bags. Upon learning the results of Yazoo's inspection, Daniels found that approximately seventy-five percent of the bags that it held were also faulty.

## DANIELS' CLAIM

■ Daniels brought this suit to recover the price of the goods pursuant to Miss. Code Ann. § 75–2–709 (1972), which provides in part:

(1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price

(a) of goods accepted or conforming goods lost or damaged within a commercially reasonable time after risk of their loss is passed to the buyer; and

(b) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.

Yazoo argues that it never accepted the bags and frames, relying on Miss. Code Ann. § 75–2–606 (1972), which provides in part:

(1) Acceptance of goods occurs when the buyer

(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or

(b) fails to make an effective rejection (subsection 1 of section 2–602) [§ 75–2–602(1)], but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

(c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

Yazoo contends that the nature of the packaging delayed Yazoo's opportunity to inspect the goods and discover the defect. The boxes containing ten to sixteen bags were shipped unopened to dealers thereby delaying discovery. It is undisputed that at least by December 1982, Kerr was aware of the tremendous magnitude of the problem with cracked chutes. Thereafter, however, he continued to indicate to Dan-

---

**9.** In the February 7 letter, Kerr also referred to late deliveries. The court finds that alterations in delivery schedules were approved by both parties. Accordingly, late delivery does not constitute a ground for breach.

**10.** Kerr testified that he disposed of the bags that were defective.

iels that Yazoo would attempt to sell the bags it had in stock and anticipated delivery of bags some time in the future. By his action, Kerr signified to Daniels that the bags were accepted in spite of his knowledge of their nonconformity. Additionally, Yazoo's continued attempts to sell the bags, as well as its destruction of the defective bags, were inconsistent with an effective rejection. Accordingly, this court is of the opinion that Yazoo accepted the bags under section 75–2–606.

■ Yazoo further contends that even if the bags were accepted, acceptance was later revoked pursuant to the terms of section 75–2–608, which states:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

In *Delhomme Industries, Inc. v. Houston Beechcraft, Inc.*, 735 F.2d 177 (5th Cir. 1984), the buyer sold an airplane back to the seller at a loss after encountering numerous problems with the plane and subsequently sued the seller for damages. The court affirmed the district court's conclusion that the buyer did not effectively revoke acceptance, stating:

Revocation of acceptance by a buyer under the UCC "is necessarily a recognition by the buyer that the property [as to which acceptance is revoked] belongs to the seller." *Stroh v. American Recreation and Mobile Home Corporation of*

*Colorado*, 35 Colo.App. 196, 530 P.2d 989, 993 (1975). Consequently, a buyer's act of dominion over the goods, including the sale of the goods, is inconsistent with a claim by the buyer that acceptance has been revoked. *Hays Merchandise, Inc. v. Dewey*, 78 Wash.2d 343, 474 P.2d 270, 273 (1970) (sales of part of goods to third parties).

Here Yazoo indicated to Daniels that it would accept future shipments and continued, even to the time of trial, to attempt to sell the bags and frames. Under these circumstances, it cannot be said that Yazoo effectively revoked acceptance.

■ Yazoo also failed to comply with the notice requirements of revocation of acceptance. The official comment to section 2–608 of the Uniform Commercial Code states that the content of the notice required to be given a seller is governed by "considerations of good faith, prevention of surprise, and reasonable adjustment. More will generally be necessary than the mere notification of breach ..." In *Solar Kinetics Corp. v. Ryerson, Inc.*, 488 F.Supp. 1237, 1247 (D.Conn.1980), the court, reviewing the statute and comment, stated that the

"notice of revocation should inform the seller that the buyer has revoked, identify the particular goods as to which he has revoked and set forth the nature of the non-conformity since such notice would corroborate the buyer's good faith and give the seller an opportunity to make a substitute performance to maintain goodwill or to avoid litigation."

In *Solar Kinetics* the court concluded that the buyer's notification to the seller that the goods were "unsatisfactory" was insufficient. *See also Delhomme*, 735 F.2d 177, 181 n. 5 (notice must adequately convey buyer's intent to revoke acceptance). Until the letter from Yazoo's counsel of June 3, 1983, Yazoo's comments regarding the products consisted of vague allegations of "shoddy merchandise." Yazoo attempts to excuse its lack of specificity by faulting Daniels' failure to inquire. The court is of the opinion that such inquiry was not nec-

essary when Yazoo's complaints were accompanied by projections of future sales. Daniels apparently did respond to Yazoo's return of the first bag by asserting that it was damaged by abuse rather than defective material. Daniels did not respond and in fact denies receipt of the other bags which Kerr claims to have returned. It must be noted, however, that Kerr never objected to Daniels' conclusion of abuse regarding the first bag or to its failure to respond after he sent the other bags. Accordingly, this court is of the opinion that Yazoo's acceptance of the products was not revoked.

■ The amount of damages to which plaintiff is entitled is governed by Miss. Code Ann. § 75–2–709 (1972) which is set out above. At trial, plaintiff established that the bags and frames were specially designed and manufactured for Yazoo and cannot be used for any other purpose and that the raw materials have no other use and cannot be resold. Plaintiff computed its damages for bags and frames in different stages of production without challenge by defendant. Plaintiff's computations, which include materials cost, labor and overhead, selling and administrative expense and profit relating to manufacture of the bags and frames, and incidental damages, are as follows:

Bags, completed:
6,953 bags @ $12.05 ........................ 83,783.65

Bags, various stages of production [11]
2,220 units @ $10.68 ...................... 23,709.60

Bags, raw material
2,459 units @ $7.50 ...................... 18,442.50

Frames, completed
764 units @ $.488 ...................... 3,728.32

Frames, in process
5,270 Units @ $4.26 ...................... 22,450.02

Incidental Damages .................. 2,379.68

TOTAL ...................................... $154,493.95

■ Daniels also contends that it is entitled to attorney fees pursuant to Miss.Code Ann. § 11–53–81 (Supp.1985) which provides in part:

When any person fails to pay an open account within thirty (30) days after receipt of written demand therefor correctly setting forth the amount owed and an itemized statement of the account in support thereof, that person shall be liable for reasonable attorney's fees to be set by the judge for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the plaintiff.

Daniels is not entitled to attorney fees under this section because its claim against Yazoo is based on contract rather than an open account. *See Westinghouse Credit Corp. v. Moore & McCalib, Inc.*, 361 So.2d 990, 992 (Miss.1978); *Champion Chemical Co. v. Hank*, 165 So. 807, 808 (Miss.1936). Accordingly, Daniels' claim for attorney fees is dismissed.

## YAZOO'S CLAIMS

■ Even though Yazoo accepted the goods and did not revoke acceptance, it can still proceed on its claims of breach of warranty. *See* Miss.Code Ann. § 75–2–714 (1972). When goods have been accepted, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Miss.Code Ann. § 75–2–607(3)(a) (1972). "The burden is on the buyer to establish any breach with respect to goods accepted." Miss.Code Ann. § 75–2–607(4) (1972). Here Yazoo has satisfied its burden of establishing grounds for breach by stipulation of the parties that "[t]he polyethelene sheeting out of which the bag chutes were constructed by Daniels was defective causing the chutes to become brittle and crack." Pre-Trial Order, p. 8.

■ Daniels contends that Yazoo's action for breach of warranties is foreclosed by failure to give adequate notice of the breach. Yazoo argues that its references to "shoddy merchandise" and its sending defective bags to Daniels satisfied the notice requirements of section 75–2–607. Ya-

---

**11.** Rogers testified that he estimated that the bags in various stages of production were 70% completed. Rogers' estimate was not challenged by defendant.

zoo relies on comment 4 to section 2–607 of the Uniform Commercial Code which states in part: "The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched." In *Eastern Airlines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 976 (5th Cir.1976), the Fifth Circuit addressed the notice requirements of section 2–607:

> However, the fact that the Code has eliminated the technical rigors of the notice requirement under the Uniform Sales Act does not require the conclusion that any expression of discontent by a buyer always satisfies section 2–607. As Comment 4 indicates, a buyer's conduct under section 2–607 must satisfy the Code's standard of commercial good faith. Thus, while the buyer must inform the seller that the transaction is 'still troublesome,' Comment 4 also requires that the notification 'be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.'

Kerr's notification to Daniels consisted solely of several vague references to problems with the product, the return of, at most, three bags and a warranty claim of $64.40. At the same time, he consistently told Daniels that he anticipated taking delivery of all bags and frames in the future when problems relating to the economy, government regulations and Yazoo's inventory were resolved. Therefore, while Yazoo did notify Daniels of the defect in the bags, Yazoo did not inform Daniels that the condition of the products rose to the level of a breach. Of course, "notice under section 2–607 need not be a specific claim for damages or an assertion of legal rights." *Eastern*, 532 F.2d at 976. Here, however, Daniels had no reason even to suspect that Yazoo considered the contract to be breach-

ed. In fact, it was not until initiation of this litigation that Daniels learned of the magnitude of the problem. Such conduct on the part of Yazoo can hardly be viewed as notification of breach.[12] *See Eastern*, 532 F.2d at 978 (buyer's conduct, taken as whole, must constitute timely notice of claim of breach). Accordingly, this court is of the opinion that Yazoo's counterclaim should be dismissed. A separate judgment shall be entered according to the local rules.

---

12. One of the goals of Article 2 of the Uniform Commercial Code, and particularly of the notice provision of § 2–607, is to encourage compromise and promote good faith in commercial relations. *See* Uniform Commercial Code § 2–607 (Comment 4); *Eastern*, 532 F.2d at 972.

That compliance with the notice requirements would have facilitated compromise and settlement in this case is clear as the defective chutes could have been repaired for less than $1.50 each. Yazoo's failure to give notice instead led to this suit.