619 So.2d 908 (1993)
Walter Del COX, Jr.
v.
HOWARD, WEIL, LABOUISSE, FRIEDRICHS, INC.
No. 89-CA-0450.
Supreme Court of Mississippi.
June 3, 1993.
*909 Gary D. Thrash, Jackson, for appellant.
J. Brad Pigott, Maxey Pigott Wann & Begley, James L. Jones, Watkins Ludlam & Stennis, Jackson, for appellee.
EN BANC.
PITTMAN, Justice, for the Court:
Howard, Weil, Labouisse, Friedrichs, Inc. (HWLF), a securities brokerage firm, filed this action against Walter Del Cox, Jr. (Cox) based on $59,523.39 due from an open account which Cox maintained with HWLF for the purpose of trading investment securities. Cox counterclaimed alleging that HWLF failed to properly process sale orders placed by Cox in which Cox requested the sale of certain options. Cox's counterclaim also alleged that HWLF overcharged Cox for services rendered by negligently computing commissions due.
The jury returned a verdict in favor of HWLF for $30,000.00 as to the "lost order" allegations and for $24,000.00 as to the commission "overcharges" and found that Cox should recover nothing. The jury found that the rate of interest which was due to HWLF from Cox on any debt was 9.87%.
The court's final judgment order granted HWLF the $54,000.00 award designated by the jury, $22,049.31 in pre-judgment contractual interest on the jury award at the interest rate set by the jury, and $69,222.56 in attorney's fees.
Cox appealed to this Court assigning as error: (1) the trial court erred in not enforcing the Customer's Agreement; (2) the trial court erred in not compelling the arbitration of the dispute between the parties as required by the Customer's Agreement; (3) the trial court erred in awarding HWLF its attorney's fees pursuant to Miss. Code Ann. § 11-53-81; (4) the trial court erred in combining two conflicting special verdicts in order to form one general verdict after the jury had been discharged; and (5) the trial court erred in granting partial summary judgment as to Count III of Cox's counterclaim. We find merit to Cox's appeal of the attorney's fees award and render a more appropriate award of $35,000.00. We find no error in the other assignments of error and affirm the judgment of the lower court.

I.
Howard, Weil, Labouisse, Friedrichs, Inc. (HWLF) is a brokerage corporation with principal offices in New Orleans. Walter Del Cox, Jr., was the representative in charge of the Vicksburg, Mississippi, branch office of the securities firm. Cox *910 was also a vice-president of HWLF. Cox opened his option account by a written agreement with HWLF in approximately 1975. This written agreement was titled the Customer Agreement. By the end of August, 1982, Cox's account reflected a debit balance of $59,523.39.
On November 5, 1984, HWLF delivered to Cox a written demand and itemized monthly statement setting forth a description of all of the transactions contributing to the creation of a debit balance in Cox's personal options account at HWLF. In January, 1985, HWLF filed a complaint against Walter Del Cox, Jr., in the circuit court of Warren County alleging an open account indebtedness for corporate stock transactions made through it by Cox in the amount of $59,523.39.
By answer and counterclaim, later amended, Cox denied the accuracy of the account. His counterclaim contained three counts. Count I alleged that HWLF failed to properly process orders he made and caused a loss of $39,382.53. Count II alleged that HWLF had overcharged him on commissions in the amount of $25,009.00. Count III alleged that HWLF employed him as a branch manager at a salary plus commissions, that HWLF fired him and notified various exchange boards and stockbrokers of this termination, this deprived him of other job opportunities. Cox sought $3,300,000.00 in damages on Count III.
Following his deposition, in which Cox acknowledged that he had never applied for another job, HWLF moved for summary judgment to dismiss Count III of the counterclaim.
On November 7, 1985, the court entered a summary judgment in HWLF's favor as to Count III and directed that Cox should take nothing under this count. Cox appealed the summary judgment on Count III to this Court. See Cox v. Howard, Weil, Labouisse, Friedrichs, Inc., 512 So.2d 897 (Miss. 1987).[1]
While awaiting disposition of the appeal on the summary judgment by this Court, a full trial was held on the cause of action filed by HWLF and the two remaining counterclaims of Cox. As to the cause of action filed by HWLF, Cox acknowledged at the trial below that he did authorize all of the executed trades accurately described on the monthly statement. The trial court instructed the jury without objection from any party that "you must find for the plaintiff, Howard, Weil, Labouisse, Friedrichs, Inc., on the claim of the open account and affix its damages in such amount as you believe from a preponderance of the evidence to be due and owing."
The only disputes left for jury deliberation, and the focus of the trial and verdict, involved two separate sets of issues raised by the two remaining counterclaims filed by Cox. The first counterclaim by Cox involved a claim that HWLF lost an order by Cox to sell Honeywell options on August 12, 1982. Cox contended at trial that the processing of the order to sell the Honeywell options was handled negligently by HWLF and that HWLF was responsible for the loss. Cox explained that he had written out a trade ticket and left it on the desk of Anne Selby, a registered representative stockbroker in the HWLF office, on Wednesday night, August 18, 1982. HWLF contended that the failure to sell the Honeywell options was Cox's fault and that he should be responsible for the loss. Anne Selby testified that she did not see Cox's written order, the "lost order", when she arrived for work on August 19, 1982, although she did find a couple of orders made out by Cox. Anne Selby did find the "lost order" in January, 1983, when she was cleaning out a desk drawer. On cross examination, Cox admitted that he did not look at the "clip" by the side of the teletype machine to see if his order had been placed, did not check the stack of confirmed orders, and did not look at the "pad" or "blotter" where figures of confirmed orders were placed.
*911 The second counterclaim by Cox involved a claim that HWLF had overcharged Cox on commissions as to his own options account. According to Anne Selby, discounts for employees were automatically computed by the New Orleans office. Anne Selby also testified that she never heard Cox complain about any commission overcharges.
On September 8, 1986, the jury specifically found that any failure to communicate the options order of which Cox complained was the result of Cox's own negligence. The jury returned a verdict in favor of HWLF in the amount of $30,000.00 as to the "lost order" allegation and found that Cox should not recover anything. The jury added, "We lowered [the] amount because we felt [the] company was partly responsible for operating [their] office and [for] proper training of employees." The jury also specifically found that Cox waived any objections to the amounts of commissions charged him by failing to assert any such objection within a reasonable time. The jury returned a verdict in favor of HWLF in the amount of $24,000.00 as to the commission "overcharges" and found that Cox should recover nothing. The jury added, "[The c]ommission overcharges [are] rounded off." The jury found that the rate of interest which was due to HWLF from Cox on any debt was 9.87%. The lower court then granted HWLF the $54,000.00 award designated by the jury, $22,049.31 in pre-judgment contractual interest on the jury award at the interest rate set by the jury, and $69,222.56 in attorney's fees.
This appeal does not challenge the evidentiary basis for any jury finding and does not challenge the sufficiency and weight of any evidence. This appeal challenges a number of procedural rulings by the lower court.

II.

THE TRIAL COURT ERRED IN NOT ENFORCING THE CUSTOMER'S AGREEMENT; HOWEVER, SUCH ERROR WAS HARMLESS.
Cox contends that the Customer's Agreement entered into by Cox and HWLF should have been enforced by the trial court. According to Cox, the plain meaning of the agreement provides that any dispute shall be settled by arbitration, that enforcement of the contract shall be governed by the laws of New York, and Cox claims that there is no provision for an award of attorney's fees.
Should New York law or Mississippi law apply to the cause sub judice?
Paragraph 17 of the Customer's Agreement provides that "[t]his agreement and its enforcement shall be governed by the laws of the State of New York and its provisions shall be continuous ... shall cover individually and collectively all accounts which the undersigned may open or re-open... ."
The general rule is that courts will give effect to an express agreement that the laws of a specified jurisdiction shall govern. Miller v. Fannin, 481 So.2d 261, 262 (Miss. 1985). In other words, the law by which a contract is to be governed is that which parties intended or may fairly be presumed to have intended. English v. Insurance Co. of North America, 270 F. Supp. 713, 715-716 (N.D.Miss. 1967), aff'd, 395 F.2d 854 (5th Cir.1968); see also Clark Equipment Company v. Poultry Packers, Inc., 254 Miss. 589, 181 So.2d 908 (1966).
Recently, the Fifth Circuit Court of Appeals addressed a question similar to the one presently at bar. The Fifth Circuit found that in an action based on a contract where a purchase order stated that the contract for the Mississippi parties would be governed by Florida law, Florida law governed. Sorrels Steel Co., Inc. v. Great Southwest Corp., 906 F.2d 158, 168, opinion amended on den'l of reh'g, 914 F.2d 695 (5th Cir.1990). Likewise, the parties, a Mississippi resident and a corporation with offices in Mississippi, in the case at bar stated that their contract would be governed by the law of another state, New York. New York law should govern any action based on their contract.
HWLF argues zealously that Mississippi law would still govern the character, form *912 and extent of the remedy as well as procedural matters. HWLF asserts that New York law would only govern questions of the scope of substantive rights. This is true. See Davis v. National Gypsum Co., 743 F.2d 1132, 1133 (5th Cir.1984); McNeal v. Administrator of Estate McNeal, 254 So.2d 521, 524-525 (Miss. 1971).
In sum, if the enforcement of the contract involves a substantive right, then New York law should apply. If enforcement of the contract involves a remedial or procedural right, then Mississippi law should apply.
Is the Customer's Agreement enforceable?
According to Mississippi law, "[t]he right to contract is a sacred right, and a contract, entered into in good faith, free from fraud, and not in violation of law by the parties, like a man's word, should be respected and enforced." Employers Mut. Cas. Co. v. Nosser, 250 Miss. 542, 569, 164 So.2d 426, 438 (1964). The parties in the case sub judice have not alleged that the agreement was entered into in bad faith.
According to New York law, a party is bound by the provisions of a contract that he signs, unless he can show special circumstances, such as fraud or other wrongful acts of the other party, that would relieve him of his obligation. See Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840 (2nd Cir.1987); Da Silva v. Musso, 53 N.Y.2d 543, 428 N.E.2d 382, 444 N.Y.S.2d 50 (1981). A New York court will relieve parties of a duty to abide by a contract only in unusual circumstances. See George Backer Management Corp. v. Acme Quilting Co., Inc., 46 N.Y.2d 211, 385 N.E.2d 1062, 413 N.Y.S.2d 135 (1978). Neither Cox nor HWLF has made any argument or showing of fraud or wrongful acts that would relieve them of their obligations.
There is no reason to find the Customer's Agreement unenforceable. Under both New York law and Mississippi law, the contract is enforceable. The trial court should have enforced all terms of the Customer's Agreement. However, this error was harmless because, as discussed infra, the trial court's conclusion regarding the dispute would remain the same even if the Customer's Agreement had been enforced.

III.

THE TRIAL JUDGE DID NOT ERR BY NOT COMPELLING ARBITRATION OF THE DISPUTE BETWEEN THE PARTIES.
Under Mississippi law, the law governing construction or interpretation of a contract in order to enforce the agreement is substantive for conflict of law purposes. See Maryland Cas. Co. v. Williams, 377 F.2d 389 (5th Cir.1967). It is clear that New York law should apply to construction of the terms of the Customer's Agreement. The words and phrases used in an agreement must be given their plain and ordinary meaning so as to define the rights of the parties. See Towl v. Estate of Block, 145 Misc.2d 433, 546 N.Y.S.2d 924 (N.Y. Sup. Ct. 1989).
Interpretation of Paragraph 16, the arbitration provision, is not simple. The provision reads:
16. Any controversy between you [account holder/broker] and the undersigned [Cox] arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, as the undersigned [Cox] may elect. If the undersigned [Cox] does not make such election by registered mail addressed to you [account holder/broker] at your main office within five (5) days after receipt of notification from you [account holder/broker] requesting such election, then the undersigned [Cox] authorizes you [account holder/broker] to make such election in behalf of the undersigned [Cox]. Any arbitration hereunder shall be before at least three arbitrators and the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the *913 award rendered may be entered in any court, state or federal, having jurisdiction.
Paragraph 16 of the arbitration provision mandates arbitration. However, as a practical matter, it is not self executing and the mandate requires action from one of the parties or both. In the case sub judice neither party acted. Cox did not act until long after his extensive participation in the court process.
It is clear from the terms that a controversy "shall be settled by arbitration ... as the undersigned [Cox] may elect." It is plain that the Customer's Agreement allows Cox to elect the rules of arbitration to be followed. If Cox does not elect such rules of arbitration, then HWLF can elect said rules on behalf of the parties. There is no provision explaining how Cox should elect arbitration if HWLF never forwards any notification to Cox. In the case at bar, neither party followed this procedure to elect arbitration. HWLF never notified Cox requesting an arbitration election. And Cox never tried to send HWLF any indication of his desire to elect arbitration. Cox did file a Motion To Dismiss Or In The Alternative To Compel Arbitration with the circuit court after extensive pre-trial litigation and 18 months after the complaint was filed by HWLF.
The contract does not specify when either party is to give notice of arbitration election. The contract does not explain at what point after a dispute arises that a party must request arbitration. When a contract is ambiguous, the contract must be drafted against the party who prepared it. Jacobson v. Sassower, 66 N.Y.2d 991, 993, 489 N.E.2d 1283, 1284, 499 N.Y.S.2d 381, 382 (1985). The contract in the controversy at bar is not ambiguous, however; it simply omits some important terms such as the specific time frame for requesting arbitration and the procedure Cox should follow if HWLF never notifies him requesting arbitration election. Where there is uncertainty in a contract, judicial construction of intent of the parties should produce reasonable results. Seneca Falls Central School Dist. v. Lorenz, 117 Misc.2d 879, 885, 459 N.Y.S.2d 689, 695 (N.Y. Sup. Ct. 1983); De Forte v. Allstate Ins. Co., 81 A.D.2d 465, 467, 442 N.Y.S.2d 307, 309 (N.Y. App. Div. 1981); Nassau Chapter, Civil Service Emp. Ass'n, Inc. v. County of Nassau, 77 A.D.2d 563, 564, 430 N.Y.S.2d 98, 100 (N.Y. Sup. Ct. 1980), aff'd, 54 N.Y.2d 925, 429 N.E.2d 831, 445 N.Y.S.2d 152 (N.Y. App. Div. 1981). In other words, the time limit for requesting arbitration should be reasonable.
Cox did not request arbitration within a reasonable time limit when we consider the eighteen month delay and his extensive participation in the litigation of the issues. It appears from the record that Cox did not bring up an arbitration question until one-and-a-half years after a complaint was filed against him, and after he had participated in almost every aspect of litigation. He simply filed a motion in the circuit court claiming his right to arbitration without notification to HWLF pursuant to the arbitration clause of the contract. Likewise, the procedure for election of arbitration in the event that HWLF does not send Cox notification of such a request must be reasonable. The entire second sentence of Paragraph 16 suggests notification by the parties to each other. Cox never notified HWLF. Thus, even though the Customer's Agreement expressly mandates arbitration, neither party took the necessary steps to begin the process. Cox did not follow a reasonable procedure to cause arbitration; rather, he proceeded in a court process which seems to abandon his right of arbitration. Construing the arbitration provision under New York law, Cox did not assert his election of arbitration in a timely manner when considered with his court actions and the eighteen months delay.
HWLF next argues that the Federal Arbitration Act, 9 U.S.C. §§ 1-16, is applicable and that the Federal Arbitration Act and federal law would prohibit arbitration in the case at bar because Cox is in default. Suffice it to say the Act itself provides that a party has the right to arbitration unless "the applicant for the stay is not in default in proceeding with such arbitration." Cox is in default under the Act; however, a *914 party defaults on or waives a demand for arbitration under the Federal Arbitration Act when that party "actively participates in a lawsuit or takes other action inconsistent with [the right to arbitration]." Cornell & Co. v. Barber & Ross Co., 360 F.2d 512, 513 (D.C. Cir.1966). Taking advantage of pre-trial litigation such as answers, counterclaims, motions, requests, and discovery obviates the right to arbitration. Id.; see also Parcel Tankers, Inc. v. Formosa Plastics Corp., 569 F. Supp. 1459, 1467 (S.D.Tex. 1983); Cornell & Co., 360 F.2d at 513.
As HWLF notes, the Fifth Circuit Court of Appeals recently addressed a similar controversy. In Price v. Drexel Burnham Lambert, Inc., 791 F.2d 1156 (5th Cir.1986), the Fifth Circuit found that the right to arbitration arising out of a Client's Agreement with a securities brokerage firm had been waived by the party who had initiated discovery and dispositive motions before demanding arbitration, and specifically found that such a party who uses the advantages of discovery and the arbitration process to delay a final judgment compromises his position to compel arbitration. Id. at 1161.
In sum, construction of the Customer's Agreement under New York contract law leads to a conclusion that Cox no longer has a right to arbitration because he did not elect arbitration in a reasonable time frame and because he participated in the trial of the issues. Even if the arbitration provision of the Customer's Agreement would give Cox the right to elect arbitration after participation in trial, then the Federal Arbitration Act, which is applicable to contractual relationships involving interstate commerce, persuades this Court to find that Cox waived or defaulted on any right to arbitration that he might have had in light of his extensive use of various modes of pre-trial litigation.
Applying the Federal Arbitration Act and federal law to the case sub judice and noting the time delay, Cox waived his right to arbitration if any right existed after he had filed an answer and counterclaim as well as a summary judgment motion, argued the summary judgment motion, requested two continuances, appealed to this Court based on a pre-trial ruling, and had requested various types of discovery.

IV.

THE TRIAL JUDGE ERRED IN AWARDING HOWARD, WEIL, LABOUISSE, FREIDRICHS, INC. EXORBITANT ATTORNEY'S FEES PURSUANT TO MISS. CODE ANN. § 11-53-81.
Cox argues that New York law is applicable and that New York law does not allow attorney's fees in claims based on an open account. He also argues that Miss. Code Ann. § 11-53-81 (1980), which allows an award of attorney's fees in a suit based on an open account, is not applicable to the case at bar because the case at bar is a suit based on contract. Finally, Cox argues that even if § 11-53-81 is applicable, then HWLF failed to comply with the statute's provisions.
Obviously, attorney's fees, a means by which violation of a right are redressed or compensated, are a remedial right. Thus, Mississippi law applies. See Davis, 743 F.2d at 1133; McNeal, 254 So.2d at 524-525.
The case at bar is a suit based on an open account. Section 11-53-81 allows the recovery of attorney's fees in a suit on an open account to a prevailing plaintiff. While it is true that a plaintiff is not entitled to attorney's fees under § 11-53-81 where its claim against the defendant is based on contract rather than an open account, C.R. Daniels, Inc. v. Yazoo Mfg. Co., 641 F. Supp. 205, 210 (S.D.Miss. 1986), the suit at bar was based on open account. An open account is a type of credit extended through an advance agreement by a seller to a buyer which permits the buyer to make purchases without a note of security and is based on an evaluation of the buyer's credit. Black's Law Dictionary (5th ed); see also Stanton & Associates, Inc. v. Bryant Constr. Co., 464 So.2d 499 (Miss. 1985). This Court has said that an account based on continuing transactions *915 between the parties which have not been closed or settled but are kept open in anticipation of further transactions meets the definition of an open account. Westinghouse Credit Corp. v. Moore, McCalib, Inc., 361 So.2d 990, 992 (Miss. 1978). The Customer's Agreement entered into by Cox and HWLF qualifies as an open account. Cox was allowed to purchase options over a period of several years without separate transactions based upon the agreement. Cox's attorney even stipulated at trial that an open account existed.
HWLF met the requirements for an award of attorney's fees based on a suit on an open account. Section 11-53-81 provides in part:
When any person fails to pay an open account within thirty (30) days after receipt of written demand therefor correctly setting forth the amount owed and an itemized statement of the account in support thereof, that person shall be liable for reasonable attorney's fees to be set by the judge for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the plaintiff... .
HWLF met these requirements. Written demand made upon the debtor must be by means of a demand letter. Putt v. Ray Sewell Co., 481 So.2d 785, 787 (Miss. 1985). HWLF, through counsel, sent a written letter of demand to Cox and filed suit 30 days later. HWLF provided an itemized statement, found in the record, to support its demand. Clearly, HWLF brought a claim on an open account and met the requirements of § 11-53-81 in order to recover attorney's fees.
This Court finds that HWLF is entitled to attorney's fees pursuant to the open account statute, but the attorney's fees awarded below were in excess of any reasonable calculation. The trial court granted $69,222.56 to HWLF as an attorney's fees award. The jury award on the claims and counterclaims as to the open account balance totaled $54,000.00. An award of attorney's fees that is greater than the recovery on an open account complaint may be an indication that the attorney's fee award is exorbitant. We agree with the court below that whatever attorney fee might be finally awarded that interest should be added thereto and that said interest should be calculated at 9.8% interest as called for by the contract. Additionally, this Court finds that an award of a fee for HWLF's necessary defense to the counterclaims is also appropriate. In sum, the fee awarded HWLF ($69,222.56) for its recovery under the open account statute and for its defense of the counterclaims appears to be excessive. However, the documents and billings offered to substantiate the fees were not made a part of the record and this Court cannot knowingly review the attorney fees requested nor can we test or review the trial judge's award. In Dynasteel Corporation v. Aztec Industries, Inc., 611 So.2d 977 (Miss. 1992), this Court said that:
This Court has, however, traditionally approved as reasonable awards of attorneys' fees in collection matters in the amount of one-third of the indebtedness. See Shackelford v. Central Bank of Mississippi, 354 So.2d 253 (Miss. 1978); Jack Cole-Dixie Highway Co. v. Red Ball Motor Freight, 254 So.2d 734 (Miss. 1971). A contingent fee in that amount is fairly standard in collection practice to the extent that we can say that it is presumptively reasonable where the amount involved is small enough so that the fee derived cannot be classified as outrageous... .
Id. at 986.
This presumption is, of course, rebuttable.
Because the award appears on this record to be excessive we therefore reverse and remand for further review by the court below.

V.

THE TRIAL JUDGE DID NOT ERR IN COMBINING TWO SPECIAL VERDICTS IN ORDER TO FORM ONE GENERAL VERDICT AFTER THE JURY HAD BEEN DISCHARGED.
Cox next contends that the two separate money verdicts returned by the jury are *916 conflicting and should not have been combined by the trial judge after the jury had been discharged.
The two separate money verdicts are not conflicting. The jury returned a verdict in favor of HWLF in the amount of $30,000.00 as to the "lost order" allegations and found that Cox should not recover anything. The jury added, "We lowered [the] amount because we felt [the] company was partly responsible for operating [their] office and [for] proper training of employees." The jury also returned a verdict in favor of HWLF in the amount of $24,000.00 as to the commission "overcharges" and found that Cox should recover nothing. The jury added, "[The c]ommission overcharges [are] rounded off." The jury found that the rate of interest which was due to HWLF from Cox on any debt was 9.87%. The court's final judgment simply utilized simple mathematics and added the two monetary awards and attorney's fees and then calculated the amount of interest due!
Because a judgment reflecting intent of a jury should be affirmed as long as the intent of the jury may be understood in a reasonably clear manner, Harrison v. Smith, 379 So.2d 517, 519 (Miss. 1980), the final judgment of the lower court is not in error.

VI.

THE TRIAL JUDGE ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT AS TO COUNT III OF COX'S COUNTERCLAIM. HOWEVER, THIS ASSIGNMENT OF ERROR IS NOT PROPERLY BEFORE THIS COURT IN THIS APPEAL.
Cox argues that the summary judgment entered by the court as to Count III of his counterclaim was error. Cox appealed the partial summary judgment, and this Court held that it was error. See Cox v. Howard, Weil, Labouisse, Friedrichs, Inc., 512 So.2d 897 (Miss. 1987). In the appeal before us today, Cox is again arguing that the summary judgment was erroneous. This assignment of error by Cox is unnecessary. This assignment of error is identical to his first appeal and has already been disposed of by this Court. This Court remanded Count III to be tried by the lower court, and it is presumably awaiting disposition by the Warren County Circuit Court.

CONCLUSION
The lower court should not have ignored the Customer's Agreement because the agreement was enforceable. In accordance with the Customer's Agreement, New York law should have been applied to substantive issues. Construction of the contract under New York law leads to the conclusion that even though Cox had a right to elect arbitration, he did not timely exercise that right. If HWLF's argument is correct and federal law applies to determination of Cox's arbitration rights, then Cox still waived any right to arbitration. Cox did not retain any right to arbitration.
The lower court's final judgment did not conflict with the jury's verdict; it simply provided a summation and reflected the jury's intent.
Thus, the judgment of the lower court that Cox did not timely exercise his right to arbitration is affirmed. The judgment of the lower court comprising a summation of the jury's special verdicts is affirmed. The award of attorney's fees is reversed and remanded. This Court affirms HWLF recovery of $54,000.00 judgment on the open account, and the recovery of $22,049.31 in interest on the account and we remand the award of attorney's fees and interest.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
HAWKINS, C.J., SULLIVAN, BANKS, ROBERTS and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J.
PRATHER, P.J., not participating.
McRAE, Justice, dissenting:
Because the majority has failed to recognize or apply the Rules of Civil Procedure, which require the filing of compulsory *917 counterclaims and provide for the bifurcation of trials, and has penalized the appellant for complying with, and attempting to utilize, those rules, I dissent.
Howard, Weil, Labouisse, Friedrichs, Inc., (HWLF) filed suit against Cox, the manager of its Vicksburg office, asserting that he owed it or the company money for a debit balance in his securities trading account in violation of its Customer Agreement, which provided for arbitration of such disputes. The firm further availed itself of Mississippi law by seeking attorney fees, which were not provided for in the contract. Cox, therefore, was forced to raise any claims he had against HWLF, not just on the contract, but also on any other related grounds pursuant to M.R.C.P. 13(a). Thus, Cox, in turn, filed a counterclaim against HWLF asserting claims of improper discharge and slander. After using the discovery processes for the other counts, Cox then did what he was required to do, that is, he sought arbitration on the contract issue. A jury found in favor of HWLF and the court awarded the firm prejudgment interest and attorney fees.
Cox appealed to this Court, arguing that the trial court erred in not enforcing the Customer Agreement and in failing to compel arbitration of the dispute between the parties. In affirming, the majority has rewarded HWLF for breaching its own contract in allowing the firm to pursue a lawsuit against Cox in a trial setting rather than in arbitration and to collect attorney fees. In the same breath, Cox has been found to have waived his right to arbitration by using the court system, when in fact he was forced to do so by HWLF's choice of forum and our rules governing counterclaims.
In so ruling, the majority loses sight of the fact that it was HWLF which filed suit against Cox in circuit court. Cox was thus bound to follow the rules set forth in the Mississippi Rules of Civil Procedure. Rule 13(a), which governs compulsory counterclaims, provides that:
A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.
Because Cox' claims of improper discharge and slander arose from the same transaction as HWLF's contract claim, Cox had no choice but to raise those issues. What was he to do except file his counterclaim and embark upon discovery? Moreover, was he to limit discovery only to the issues raised in his counterclaim, leaving for another day the contract issue which was properly a subject for arbitration? MRCP Rule 1 provides that "[t]hese rules shall be used to secure the just, speedy and inexpensive determination of every action." Today's decision makes light of that directive.
The majority sugar coats its decision by stating that the right to contract is a sacred right, and that a contract in and between the parties made in good faith, free from fraud and not in violation of the law, is like a person's word, to be respected and enforced. Employers Mutual Casualty Co. v. Nosser, 250 Miss. 542, 569, 164 So.2d 426, 438 (Miss. 1964). Under New York law, a party is bound by the provisions of a contract that he has signed absent a showing of special circumstances such as fraud, or other wrongful acts of the other party that relieve him of his obligation. Genesco, Inc. v. T. Kakiuschi & Co., Ltd., 815 F.2d 840 (2nd Cir.1987). The majority further sweetens its finding that the Customer Agreement is enforceable under both New York and Mississippi law by stating that the trial court's refusal to enforce the agreement is harmless error.
The majority correctly cites paragraph 16 of the arbitration provision for the proposition that it is mandatory that any disputes arising between the parties shall be settled by arbitration. Paragraph 16 further provides that:
[a]ny arbitration hereunder shall be before at least three arbitrators and the award of the arbitrators or the majority of them shall be final, and judgment upon the award rendered may be entered *918 in any court, state or federal, having jurisdiction.
The plain language of this clause clearly provides that arbitration, not a trial, is the proper route to take when settling a dispute between a client and the brokerage firm. It further shows that the intent of the parties, if they so desire, is to use the discovery process of the court system. However, arbitrators are to be used to settle the dispute, thus eliminating the enormous expenses of litigation. To simply say that Cox waived his right to arbitration, which, in effect, writes new terms into the contract, is contrary to both Mississippi and New York law. Clearly the intent of the parties is shown by paragraph 16 of the Customer Agreement. That is, they would simply arbitrate any dispute and have the decision or award entered in the court of proper jurisdiction, giving the arbitration panel's decision the full force and effect of the law. Moreover, Rule 42(b) provides for the bifurcation of issues or claims thereby allowing those claims which are properly the subject of arbitration to be separated from those which should be the subject of a jury trial.
The majority hoists its own petard when it states that the contract in controversy at bar is not ambiguous; the contract simply omits such important terms such as a specific time frame for requesting arbitration and the procedure Cox should follow if HWLF failed to request arbitration. The majority further states that even though the Customer Agreement expressly mandates arbitration, neither party took the steps to begin the process. Applying the Federal Arbitration Act and federal law, the majority then finds that Cox waived his right to arbitration, if any right existed, by filing an answer and counterclaim as well as a motion for summary judgment, arguing the summary judgment motion, requesting two continuances, appealing a pre-trial ruling to this Court, and seeking various types of discovery. It would appear that the majority is saying that once an answer is filed, the right to arbitration is waived. The Customer Agreement provides for judgments enforceable in any court of proper jurisdiction, thus presupposing that the parties may use the discovery process of the court to determine the facts necessary to bring the contract aspects of the case to arbitration. Moreover, since Cox was forced by HWLF into a lawsuit, he was compelled not only to discover facts relevant to the contract issue, but also to the counterclaims he was required by Rule 13(a) to raise. In so doing, he neither violated any rules nor waived his right to arbitration. To the contrary, MRCP Rule 42(b) permits the bifurcation of trials:
The court, in furtherance of convenience or to avoid prejudice, or when conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by Section 31 of the Mississippi Constitution of 1890.
In this case, I believe the just, expeditious and economical course would have been to direct the contract issue to the arbitration panel, then to proceed to court for the enforcement of the panel's judgment and resolution of the non-contract issues.
Accordingly, I disagree with the majority and would reverse and remand the case for arbitration. In my opinion, arbitrators would be more familiar with the complex issues in this case. Both sides had agreed to arbitration in the commercial setting. Moreover, I believe that Cox was prejudiced by the trial court's grant of HWLF's peremptory instruction, which could not have been used in arbitration.
The majority proceeds to dance the Texas two-step, two steps here, two steps there, penalizing Cox for acquiescing to HWLF's choice of forum by saying he waived his rights, and then applying Mississippi law to the benefit of HWLF, which obviously did not want the dispute to be arbitrated. It was to the brokerage firm's advantage to circumvent the intent of the contract's mandatory arbitration provisions of paragraph 16 in order to reach under § 11-53-81, which provides for attorney *919 fees for suits brought on open accounts. In any legal battle, the majority should not allow parties who have finessed the system and come in with unclean hands to benefit from the circumvention of key contract provisions as has been done in this case.
The parties agreed by contract that any disputes which arose between them would be settled by arbitration. Both parties knew that this provision was mandatory and knew of the agreements made with each other. Each party exercised that provision at some time after the lawsuit had been filed. The contract further calls for enforcement of the arbitration panel's judgment in any state or federal court. Both parties agreed to this method of dispute resolution. Therefore, each side knew that eventually a judgment would be entered in the court of proper jurisdiction, to be enforced at that time, and not to call prematurely for a jury sitting.
I believe that the judgments should have been arbitrated. I further disagree with the award of attorney fees and interest, and therefore, I dissent.
DAN M. LEE, P.J., joins this opinion.
NOTES
[1] On September 2, 1987, this Court held that the granting of the partial summary judgment was improvident and remanded Count III of the counterclaim to the Warren County Circuit Court. Count III on remand is not included in the current appeal.