# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-M-00048-SCT

*IN RE: TYCO INTERNATIONAL (US) INC.,*
*ADT AUTOMOTIVE INC., ADT SECURITY SVCS,*
*INC., MS AUTO AUCTION, INC., BILL*
*BENTON, JUDY TAYLOR AND ANGIE TAYLOR*

### CONSOLIDATED WITH

## NO. 2003-CA-02590-SCT

*AARON D. WILLIAMS d/b/a AARON WILLIAMS*
*AUTO SALES*

*v.*

*TYCO INTERNATIONAL (US) INC.; ADT*
*AUTOMOTIVE, INC., d/b/a MISSISSIPPI AUTO*
*AUCTION, INC.; JUDY TAYLOR; ANGIE*
*TAYLOR; AND BILL BENTON*


| | |
|---|---|
| DATE OF JUDGMENT: | 09/23/2003 |
| TRIAL JUDGE: | HON. ROBERT H. WALKER |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | E. GREGORY SNOWDEN |
| ATTORNEYS FOR APPELLEES: | FRED L. BANKS, JR. |
| | JOHN W. ROBINSON |
| | DEBRA M. BROWN |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 08/18/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE WALLER, P.J., GRAVES AND RANDOLPH, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. On June 28, 2000, Aaron D. Williams d/b/a Williams Auto Sales ("Williams") filed a complaint against Tyco International (US) Inc. ("Tyco"); ADT Automotive, Inc. d/b/a Mississippi Auto Auction, Inc. ("MAA"); ADT Security Services, Inc. ("ADT Security"); Bill Benton ("Benton"),[1] both in his individual capacity and as agent; Judy Taylor,[2] both in her individual capacity and as agent; Angie Taylor,[3] both in her individual capacity and as agent (collectively "Tyco defendants"); Robinson-Adams Insurance, Inc. d/b/a Auction Insurance Agency ("Robinson-Adams"); and Thomas J. Adams, Jr. ("Adams"),[4] both in his individual capacity and as agent (collectively "Robinson-Adams defendants"), in the Circuit Court of the Second Judicial District of Jones County, Mississippi.[5]

¶2. On July 31, 2000, in response to Williams's complaint, the Tyco defendants filed a motion to recuse Circuit Judge Billy Joe Landrum, and also filed a motion to dismiss, or in the alternative, to transfer venue.

¶3. On September 15, 2000, Williams propounded discovery requests upon Benton and Judy Taylor, and thereafter propounded discovery requests upon the Robinson-Adams defendants on September 26, 2000.

---

[1] Mississippi Auto Auction, Inc.'s Credit Manager.

[2] Mississippi Auto Auction, Inc.'s General Manager.

[3] Mississippi Auto Auction, Inc.'s Business Manager.

[4] Robinson-Adams' Agent.

[5] Williams also named as defendants John or Jane Does 1-20.

¶4. On October 1, 2000, before either of the two motions filed by the Tyco defendants were ruled upon, the Tyco defendants filed a motion for stay of discovery, arguing that "[p]roceeding with discovery before these determinations are made would not be prudent, as it will only risk wasting the time and resources of the Court, especially since the parties to this action may be dismissed, the case transferred, or the instant Court recused."

¶5. A hearing was conducted on November 14, 2000, on the Tyco defendants' motion to recuse and motion to dismiss, or in the alternative, to transfer venue. Subsequently, on December 8, 2000, Circuit Judge Billy Joe Landrum entered an order denying the Tyco defendants' motions.

¶6. In response to the denial of their motions, the Tyco defendants filed a motion for reconsideration or, alternatively, for certification of issues for interlocutory appeal on December 29, 2000. On that same day, the Tyco defendants also filed a: (1) supplement to defendants' motion to recuse and (2) motion for stay of proceedings pending adjudication of defendants' motions for reconsideration, supplement to motion to recuse, and for certification and petition of issues for interlocutory appeal. Responding to the Tyco defendants' motion, Williams filed response including memorandum of law in opposition on February 22, 2001. Thereafter, the trial court denied the Tyco defendants' motion for reconsideration on February 27, 2001, and ordered the Tyco defendants to respond to Williams's discovery requests within twenty days from the date of the order.

¶7. Subsequently, on March 14, 2001, approximately nine months following the filing of Williams's complaint, the Tyco defendants filed their joint answer and defenses, wherein they asserted as a fourth affirmative defense: "The plaintiff is bound to arbitrate the matters alleged

3

in the complaint against Defendants herein and accordingly, the complaint should be dismissed." The arbitration agreement was not attached to the Tyco defendants' answer and defenses, or otherwise filed.

¶8. On March 19, 2001, the Tyco defendants responded to discovery requests as ordered by the trial court.

¶9. Although denying the Tyco defendants' motion for reconsideration, the circuit judge did not rule on their request for certification of the recusal and venue issues for interlocutory appeal. When subsequent requests for a ruling by the Tyco defendants yielded no results, they filed a petition for extraordinary writ of prohibition and/or mandamus in this Court on January 9, 2002, seeking to require the circuit judge to rule on the motion for certification of issues for interlocutory appeal or to recuse himself. Ultimately, on June 13, 2002, this Court granted the Tyco defendants' petition, thereby requiring Judge Landrum to recuse himself from further participation in the proceedings. In accordance with this Court's order, on June 18, 2002, Judge Landrum executed an order recusing himself.[6]

¶10. On July 3, 2002, this Court appointed Honorable Robert I. Prichard, III, as Special Circuit Court Judge to preside over the case, but Judge Prichard recused himself by order executed on July 29, 2002. Consequently, this Court appointed Honorable Robert Harry Walker to preside on August 15, 2002.

---

[6] This Court initially denied the Tyco defendants' emergency motion for stay of proceedings and ordered Judge Landrum, Williams, and the Robinson-Adams defendants to file responses to the petition by order dated May 23, 2002.

4

¶11.   Pursuant to his appointment, Judge Walker conducted a telephonic conference call with the parties' counsel, and thereafter issued a notice of trial on November 18, 2002, setting the cause for trial on September 29, 2003.

¶12.   Williams contemporaneously prepared and circulated for signature a proposed order setting the case for a jury trial on September 29, 2003, and establishing a schedule for the proceedings,[7] which the Tyco defendants' attorneys signed as "Agreed and Approved."[8]

¶13.   On August 4, 2003, the parties agreed to an amended order setting the case for a jury trial and establishing an amended schedule for proceedings, which extended discovery for one month until August 1, 2003, and extended the time for filing pre-trial dispositive motions for twenty days until August 15, 2003.

¶14.   On February 18, 2003, the Robinson-Adams defendants filed its designation of experts, and on February 21, 2003, the Tyco defendants joined in the Robinson-Adams defendants' designation.

¶15.   On June 11, 2003, Williams was deposed pursuant to notice issued by the Robinson-Adams defendants.  The Tyco defendants' counsel made an appearance at the deposition.  On June 30, 2003, Williams noticed the depositions of the Tyco individual defendants[9] and the

---

[7] The proposed scheduling order included procedural deadlines for the following: designation of expert witnesses (January 13, 2003 for plaintiff, and February 14, 2002 for defendants); conclusion of discovery (July 1, 2003); and filing all pre-trial dispositive motions (July 25, 2003).

[8] Although the agreed order does not appear in the record because of the inadvertent non-filing in the trial court and may not have even been presented to Judge Walker for entry, the parties do not dispute this agreement.

[9] Judy Taylor, Angie Taylor, and Benton.

5

Tyco corporate defendants.[10] Although the depositions of the Tyco individual defendants were taken,[11] the Tyco defendants objected to the taking of the Tyco corporate defendants' depositions.

¶16. On September 2, 2003, over three years subsequent to the filing of Williams's complaint and after the discovery and filing of pre-trial dispositive motion deadlines had passed, the Tyco defendants moved for a stay of proceedings and to compel Williams to arbitrate his claims against them.[12] Subsequently, on September 16, 2003, the Tyco defendants filed a supplement to motion for stay of proceedings and to compel arbitration.

¶17. Following a hearing, Judge Walker entered an order granting the Tyco defendants' motion for stay of proceedings and to compel arbitration on September 24, 2003.

¶18. On October 8, 2003, Williams filed a motion for reconsideration, to amend or alter judgment, or in the alternative, for Rule 54(b) certification. In opposition, the Tyco defendants filed a response to Williams's motion. During the period in which Williams's motion was pending, the trial court entered orders granting summary judgment in favor of the Robinson-Adams defendants on October 22, 2003. Additionally, the trial court granted Williams's motion for an extension of time to file a notice of appeal. Subsequently, on November 24,

---

[10] Tyco, MAA, and ADT Security.

[11] Benton's deposition was not taken because of illness.

[12] ADT Security Services, Inc. did not join in this motion because of its reliance upon Williams's prior agreement to voluntarily dismiss it from the case. However, although the order of dismissal was forwarded to counsel for Williams, who acknowledged its receipt, it was never executed on Williams's behalf and entered by the Court.

6

2003, the trial court denied Williams's motion for reconsideration, to amend or alter judgment, or in the alternative, for Rule 54(b) certification.

¶19. The grant or denial of a motion to compel arbitration is reviewed de novo. *Tupelo Auto Sales, Ltd. v. Scott,* 844 So. 2d 1167, 1169 (Miss. 2003) (citing *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002) and *Webb v. Investacorp. Inc*., 89 F.3d 252, 256 (5th Cir. 1996)). Here, Williams appeals the order granting the Tyco defendants' motion for stay and proceedings and to compel arbitration and raises the following issues:

> I. Whether the trial court erred in finding that plaintiff/appellant agreed to arbitrate the claims that are the subject of this litigation, i.e., whether there exists a valid agreement to arbitrate the claims presented to the court.
>
> II. Whether the trial court erred in finding that the nature of the claims presented to the court were within the scope of the purported arbitration language of the Dealer Registration Agreement relied upon by the Tyco defendants.
>
> III. Whether the trial court erred in finding that the purported arbitration language may be asserted at all by the non-signatory Tyco defendants in light of the fact that the entity purportedly protected by the Dealer Registration Agreement no longer has any corporate existence whatsoever, and the remaining Tyco defendants have made no showing as to their legal entitlement to assert the purported arbitration rights of a defunct entity.
>
> IV. Whether the trial court erred in finding that the Tyco defendants had not expressly waived any right to compel arbitration by their having *twice* specifically agreed and consented to a jury trial of the action which was scheduled to begin on September 29, 2003.
>
> V. Whether the trial court erred in finding that the Tyco defendants had not impliedly waived any right to compel arbitration through their active participation in the litigation.
>
> VI. Whether the Tyco defendants impliedly waived any right to compel arbitration through their excessive delay in making any demand therefor.

7

VII. Whether the Tyco defendants waived any right to compel arbitration by virtue of the applicable provisions of the Mississippi Rules of Civil Procedure through their failure to include their demand for arbitration in their Rule 12 motions heard and determined by the court in November, 2000.

¶20. As issues IV-VI are dispositive of this appeal, this Court declines to address the remaining issues.

## FACTS

¶21. Williams is a used automobile dealer in Waynesboro, Mississippi, and owns Aaron Williams Auto Sales. Williams has been in the business of buying and selling cars since 1997. The primary source Williams utilizes for obtaining the used cars he sells is automobile auctions. From 1997 until 1999, Williams attended MAA in order to purchase used cars that he would resale to the public. To qualify to purchase cars at MAA, Williams was required to register with MAA. All dealers are required to execute a Dealer Registration Agreement (the "Agreement") before being allowed to purchase cars, and Williams signed the Agreement by which he, among other things, agreed and acknowledged that:

> Any controversy or claim arising out of this Agreement or relating in any way to any transaction at Auction or otherwise in which Dealer engaged pursuant to this Agreement shall be finally settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the Arbitrator(s) (which may include the costs of arbitration and reasonable attorneys' fees to the prevailing party) may be entered in any court having jurisdiction thereof.

Williams also agreed and acknowledged by execution of the Agreement that the Agreement "may be terminated by the Auction at any time with or without cause."

¶22. On or around July 1999, Williams, a regular patron of MAA, entered MAA's premises to participate in a weekly used car auction, but was informed that his business relationship with

8

MAA had been terminated. In his complaint, Williams, a Caucasian male, alleges that persons employed by him that accompanied him to the auction were being systematically harassed, mistreated or embarrassed by MAA personnel. Furthermore, Williams alleges that when he complained to MAA management about the treatment of his employees, a boisterous incident erupted during which an MAA employee stated: "Hadn't I told you about those damn n****** you got with you?" Following this incident, the same employee abruptly barred Williams from conducting any further business at the auction, purportedly basing his action on creditworthiness issues and stating that Williams "had been ko'd," meaning that Williams's "name had appeared 'in the ko book.'" Because Williams was unaware as to what the "ko book" was, he inquired further, and he was informed that the "ko book" contained names of persons who "had written bad checks to auctions or had drafts to auctions returned, or [who] owed money to auctions [and] hadn't paid." The so-called "ko book," which is published by Robinson-Adams, allegedly identified Williams as a "supposed undesirable potential auto dealer [patron] of auto auctions."

¶23. However, Williams alleges that it was not the "ko book" listing regarding his previous transactions that caused the MAA to ban his participation, but rather because he "regularly employs African-Americans," and "[MAA] didn't like the companionship [Williams] had with his black associates and employees."

**DISCUSSION**

¶24. Williams asserts that the Tyco defendants *impliedly* waived their right to seek arbitration through their active participation in this litigation and by their excessive delay of three years before making a demand to compel arbitration. Additionally, Williams claims that

9

the Tyco defendants *expressly* waived their right to arbitration because they did so twice in writing via: (1) an order setting the case for jury trial and establishing a scheduling order for the proceedings and (2) an *amended* order setting the case for jury trial and establishing a scheduling order for the proceedings, which was signed as agreed and approved by counsel for the Tyco defendants and extended discovery for one month and the date for filing pre-trial dispositive motions for twenty days.

¶25. The Tyco defendants assert that because they raised arbitration in their answer and their participation in "actual litigation" was "extremely limited," they have not waived their right to arbitration, although the record belies the same.

¶26. A time line of the pertinent occurrences is helpful:

June 28, 2000–the complaint was filed by Williams;

July 31, 2000–the Tyco defendants filed a motion to recuse the trial judge and also a motion to dismiss on Rule 12(b)(3), or in the alternative, to transfer venue;

September 15, 2000–Williams propounded discovery requests upon Benton and Judy Taylor;

October 1, 2000–the Tyco defendants filed a motion for stay of discovery;

November 14, 2000–a hearing was held on Tyco defendants' motion to recuse and motion to dismiss, or in the alternative, to transfer venue;

December 8, 2000–Circuit Judge Billy Joe Landrum entered an order denying the Tyco defendants' motions;

December 29, 2000–in response to the order denying their motions, the Tyco defendants filed a motion for reconsideration, or alternatively, sought certification of issues for interlocutory appeal;

December 29, 2000–the Tyco defendants filed a supplement to their motion to recuse;

10

December 29, 2000–the Tyco defendants filed a motion for stay of proceedings pending adjudication of their motions for reconsideration, supplement to their motion to recuse, and for certification and petition for interlocutory appeal;

February 27, 2001–Judge Landrum denied the Tyco defendants' motion for reconsideration and ordered them to respond to Williams's discovery responses within twenty days, although Judge Landrum did not rule on their motion for certification and petition for interlocutory appeal;

March 14, 2001–approximately nine months following the filing of Williams's complaint, the Tyco defendants filed their joint answers and defenses, wherein they asserted as a fourth defense: "The plaintiff is bound to arbitrate the matters alleged in the complaint against Defendants herein and accordingly, the complaint should be dismissed," although no copy of a written arbitration agreement was attached or filed with the answers and defenses;

March 19, 2001–the Tyco defendants responded to Williams's discovery requests;

January 9, 2002–the Tyco defendants filed a petition for extraordinary writ of prohibition and/or mandamus seeking to require Judge Landrum to rule on their motion for certification of issues for interlocutory appeal or to recuse himself;

June 13, 2002–this Court granted the Tyco defendants' motion to require Judge Landrum to recuse;

June 18, 2002–Judge Landrum enters a recusal order;

July 3, 2002–this Court appointed the Honorable Robert I. Prichard, III, as Special Circuit Court Judge to preside over the case;

July 29, 2002–Judge Prichard recused himself;

August 15, 2002–this Court appointed the Honorable Robert Harry Walker;

November 18, 2002–following a telephonic conference with parties' counsel, Judge Walker issued a notice of trial, setting the trial for September 29, 2003;

date unknown–following the telephonic conference, Williams prepared and circulated for signature a proposed order setting the case for a jury trial, and establishing a scheduling order, which the Tyco defendants signed as "Agreed and Approved";

11

February 21, 2003–the Tyco defendants joined in the Robinson-Adams defendants' designation of experts of February 18, 2003;

June 11, 2003–Williams was deposed pursuant to notice by the Robinson-Adams defendants and Tyco defendants' counsel attended the deposition;

June 30, 2003–Williams noticed depositions of Tyco individual and corporate defendants;

August 4, 2003–an order was entered stating that the parties "Agreed and Approved" to an amended order regarding setting the case for jury trial and establishing a second scheduling order, which extended discovery for one month and the time for filing pre-trial dispositive motions for twenty days;

August 21, 2003–the Tyco defendants filed objections only to the taking of the Tyco corporate defendants' depositions;

September 2, 2003–the Tyco defendants *first moved for stay of proceedings and to compel arbitration*, which was over 3 years after the filing of Williams's complaint, only approximately 3 weeks before trial was to begin, and *after* the discovery and pre-trial dispositive motions deadlines had passed;

September 16, 2003–the Tyco defendants filed a supplement to motion for stay of proceedings and to compel arbitration;

September 16, 2003–a hearing was held on Tyco defendants' motion, following which, Judge Walker advised he would sustain the Tyco defendants' motion; and

September 24, 2003–three days before the jury trial was to begin, Judge Walker entered an order sustaining the Tyco defendants' motion for stay of proceedings and to compel arbitration.

¶27. In Mississippi, a party waives the right to arbitrate when it "*actively participates in a lawsuit or takes other action inconsistent with the right to arbitration.*" ***Cox v. Howard, Weil, Labouisse, Friederichs, Inc.***, 619 So. 2d 908, 913-14 (Miss. 1993). "Taking advantage of pre-trial litigation such as answers, counterclaims, *motions, requests, and discovery* obviates the right to arbitration." ***Id.*** at 914.

12

¶28.     In *University Nursing Associates, PLLC v. Phillips*, 842 So. 2d 1270, 1276-77 (Miss. 2003), we again acknowledged that a party attempting to invoke arbitration *may effectively waive that right if the party actively engages in litigation* (citing **Cox**, 619 So. 2d at 914). Likewise, in **Phillips**, we acknowledged that "[w]aiver will be found when the party seeking arbitration *substantially invokes the judicial process to the detriment or prejudice of the other party.*" **Id.** at 1278 (citing **Subway Equip. Leasing Corp. v. Forte**, 169 F.3d 324, 326 (5th Cir. 1999); **Miller Brewing Co. v. Fort Worth Distrib. Co.**, 781 F.2d 494, 497 (5th Cir. 1986)).     Finally, in **Phillips**, we issued this caveat:  "As a practice note, parties *desiring to seek arbitration should promptly file and present to the trial court a motion to stay proceedings and a motion to compel arbitration.*"  842 So.2d at 1277.

¶29.     More recently, Justice Carlson writing for the Court, addressed waiver again.  *See* **Pass Termite & Pest Control, Inc. v. Walker**, 904 So. 2d 1030, 1034-35 (Miss. 2004).  In **Pass Termite**, Joe and Carolyn Walker (collectively "the Walkers") brought an action against Pass Termite & Pest Control, Inc. ("Pass"), a pest control company, for fraud and breach of contract after they purchased a home following a pest inspection.  **Id.** at 1031-32.  Pass filed its answer, but failed to affirmatively plead arbitration as a defense to the Walker's claim.  **Id.** Additionally, Pass demanded a jury trial and that judgment be entered in its favor.  **Id.** Subsequently, Pass propounded interrogatories and requests for production of documents on the Walkers, and 237 days later, filed a motion to compel the Walkers to arbitrate, although did not request leave to amend its answer in order to assert the affirmative defense of arbitration.  **Id.**   Responding to Pass's motion, the Walkers asserted that Pass had "waived its

13

right to claim any entitlement to arbitration in [the] cause" because of Pass's failure to affirmatively plead arbitration in its answer and had availed itself of the discovery process. *Id.* The trial court issued an order denying Pass's motion to compel arbitration. *Id.* at 1032. On interlocutory appeal, this Court affirmed the judgment of the trial court stating:

> In the instant case, Pass not only failed to file a motion to compel arbitration and failed in its answer to allege the affirmative defense of arbitration, it went so far in its answer as to request that the dispute be tried before a jury. *A jury trial is characteristic of the judicial process, not arbitration.* That request is inconsistent with asserting a right to arbitration. This coupled with the fact that Pass invoked the discovery process indicates its intent to forgo its right to arbitration.
>
> We can comfortably distinguish the above cited Fifth Circuit cases [(*Walker v. J.C. Bradford & Co.*, 938 F.2d 575 (5th Cir. 1991) and *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985))] and our cases from the case sub judice. The *237-day delay before invoking arbitration*, coupled with the invocation of the discovery process after failing to raise the defense of arbitration in its initial pleading bring us to our conclusion that Pass has effectively waived its right to invoke arbitration. Stated differently, when a party, *with full knowledge of the existence of an arbitration clause in the contract which is the subject matter of the litigation, makes a conscious decision to proceed with responding to the lawsuit*, demanding a jury trial, and invoking discovery only to thereafter invoke the arbitration clause, *that party does so at its own peril*, and *prejudice to the non-moving party will be presumed* for failure to comply with the provisions of Miss. R. Civ. P. 8(c). In so holding, we are satisfied without doubt that today's decision in no way does violence to the federal law and our state law favoring arbitration.
>
> This Court has acknowledged and adopted the federal policy favoring arbitration. *See generally McKenzie Check Advance of Miss., LLC v. Hardy*, 866 So. 2d 446 (Miss. 2004); *Sanderson Farms, Inc. v. Gatlin*, 848 So. 2d 828 (Miss. 2003); *Wilson v. Greyhound Bus Lines, Inc.*, 830 So. 2d 1151 (Miss. 2002). It is well-settled that this Court adheres to federal policy favoring arbitration.
>
> However, there are several rationales behind today's decision. Primarily, by making a clear statement as to when the right to arbitration ordinarily should be pled, we eliminate any uncertainty that may plague future litigation.

> *Certainty during litigation favors this Court's effort to ensure judicial efficiency and the expeditious resolution of disputes*. Further, this approach creates an *incentive for parties to be more diligent in submitting defenses*. The result of such an incentive is that the trend will now be that trial courts will learn *early on in the life* of a civil case about the existence of arbitration agreements and *be able to more quickly dismiss disputes* which our trial courts find to be controlled by arbitration clauses.

904 So. 2d at 1035 (emphases added) (internal footnotes omitted). Importantly, in Pass Termite, this Court stated that the inclusion of the defense of arbitration in an answer is not determinative, but rather is "a factor we may consider along with the other facts existing in [the] case." *Id.* at 1033.

¶30.    In a case involving interstate commerce and therefore the Federal Arbitration Act, we have held that a right to arbitrate was waived when the party requesting arbitration had "participated in almost every aspect of litigation" and made "extensive use of various modes of pre-trial litigation." *Cox*, 619 So. 2d at 913 (citing *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156 (5th Cir. 1986)). In *Cox*, the party demanding arbitration filed an answer and counterclaim, a motion for summary judgment, argued the motion for summary judgment, requested two continuances, filed an interlocutory appeal, and requested various types of discovery. 619 So. 2d at 914.

¶31.    This Court has stated:

> "Congress' clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute *out of court and into arbitration as quickly and easily as possible*." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983) (quoted with favor in Miller Brewing, 781 F.2d at 496). In *Miller Brewing*, Fort Worth Distributing Company first sued Miller Brewing, and then, three and a half years later, after losing in court, sought arbitration. The Fifth Circuit held Miller Brewing could "hardly be seen as moving the parties into arbitration 'as quickly and easily as possible.'" *Id.* at 497.

*Phillips*, 842 So. 2d at 1278 (emphasis added).

¶32. In the case sub judice, we find that the Tyco defendants have waived the right to arbitration based upon their active participation in the lawsuit and their taking of actions inconsistent with the right to arbitration, beginning with their very first pleadings. The Tyco defendants' first pleadings were motions to recuse the trial judge, dismiss, or in the alternative, to transfer venue, none of which sought to invoke arbitration. The Tyco defendants' multiple acts of seeking judicial relief from the trial court, including a dispositive motion, is clearly inconsistent with seeking arbitration. Williams makes a compelling argument regarding the Tyco defendants' motion to recuse:

> Why, one reasonably might ask, did the Tyco defendants expend all of the time, energy and expense involved in their two-year crusade to recuse the trial judge (ostensibly to maintain their right to a "fair trial") if, as Tyco now contends, they never had any obligation to go to trial in the first place? Any argument that such a course of action was legally necessary to preserve (*i.e.*, and not to waive) their right to have a newly-appointed judge to rule on dispositive matters is wholly disingenuous–after all, Tyco never hesitated to present *other* potentially dispositive motions before Judge Landrum for decision, not to mention two separate motions requesting the trial court to order a stay.

(Internal citations omitted) (emphasis in original).

¶33. The Tyco defendants took other actions inconsistent with the right to arbitrate, including : (1) filing a motion for stay of discovery; (2) attending a hearing on their motion to recuse and motion to dismiss, or in the alternative, to transfer venue (seeking a separate judicial non-arbitration forum); (3) filing a motion for reconsideration, or alternatively, for certification of issues of interlocutory appeal; (4) filing a supplement to their motion to recuse; (5) filing a motion for stay of proceedings pending adjudication of their then-pending motions; (6) filing a petition for extraordinary writ of prohibition and/or mandamus; (7)

agreeing and executing an order setting the case for a jury trial with a scheduling order; (8) agreeing and executing an amended order setting the case for a jury trial on September 29, 2003, extending discovery deadlines, and extending the time for filing pre-trial dispositive motions; (9) joining in the Robinson-Adams defendants' designation of experts; and (10) attending depositions.

¶34.    The Tyco defendants did not file a motion to compel until less than one month prior to the case going to trial by jury, an event which the Tyco defendants "Agreed and Approved." Importantly, the Tyco defendants' motion to compel arbitration was filed more than three years following the filing of Williams's complaint and more than two and one-half years following the filing of their answer.

### CONCLUSION

¶35.    We find that the excessive delay is contrary to the spirit and intent of the public policy favoring arbitration.   The Tyco defendants sought the advantages accorded by the judicial process, and by actively participating in numerous actions inconsistent with compelling arbitration over the course of nearly 3 years, we find that the Tyco defendants clearly waived their right to arbitrate Williams's claims.

¶36.    Stated again, "Congress' clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute *out of court and into arbitration as quickly and easily as possible.*" *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, 103 S. Ct. at 941, 74 L. Ed. 2d 765 (emphasis added).   The Tyco defendants failed to take actions to move this case "out of court and into arbitration as quickly and easily as possible."   Consequently, we reverse the judgment of the

Circuit Court of the Second Judicial District of Jones County, Mississippi, and remand this case for proceedings consistent with this opinion on the merits vel non of Williams's claims.

¶37.    **REVERSED AND REMANDED.**

**WALLER, P.J., EASLEY, CARLSON, GRAVES AND DICKINSON, JJ., CONCUR. SMITH, C.J., CONCURS IN PART AND IN RESULT. COBB, P.J., CONCURS IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.**