# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00039-COA

KENNETH PURVIS                                          APPELLANT

v.

MAR-JAC POULTRY MS, LLC AND R AND L                    APPELLEES
POULTRY SERVICES, INC. D/B/A THE AGRI-
BUSINESS STORE

DATE OF JUDGMENT:             12/02/2020
TRIAL JUDGE:                  HON. ROBERT THOMAS BAILEY
COURT FROM WHICH APPEALED:    WAYNE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       CLARENCE McDONALD LELAND
ATTORNEYS FOR APPELLEES:      SHELDON G. ALSTON
                              CODY CAROL BAILEY
                              JACOB ARTHUR BRADLEY
                              RICHARD D. NORTON
NATURE OF THE CASE:           CIVIL - CONTRACT
DISPOSITION:                  AFFIRMED - 08/16/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**EMFINGER, J., FOR THE COURT:**

¶1.     On March 25, 2020, Kenneth Purvis filed a complaint against Mar-Jac Poultry MS,

LLC and other defendants alleging negligence in connection with a fire that destroyed two

buildings in Purvis' poultry-egg producing operation.[1]   Mar-Jac filed a motion to compel

---

[1] Purvis listed several other parties as defendants in his complaint; however, Mar-Jac is the only defendant participating in this appeal.  Counsel entered an appearance for R and L Poultry Services Inc. d/b/a The Agri-Business Store, and counsel entered an appearance for Danny Wilks.  Both were excused from filing appellate briefs, as they "take[] no position one way or the other[.]"

arbitration simultaneously with its answer and counterclaim to Purvis' complaint. After hearing arguments from counsel, the Circuit Court of Wayne County entered an order granting Mar-Jac's motion to compel arbitration. Further, the court granted a stay in all proceedings "pending completion of the arbitration process and the entry of the arbitrator's decision."

**FACTS AND PROCEDURAL HISTORY**

¶2.     Purvis was the owner and operator of a poultry-egg-producing operation in Wayne County, Mississippi. On December 14, 2016, Purvis entered into a "Hatching Egg or Pullet Contract" (Contract) with Mar-Jac.[2] Pursuant to the contract, Mar-Jac provided Purvis with "Breeders and roosters" (birds). In turn, Purvis housed the birds, facilitated their breeding, and collected eggs. The Contract also included a lengthy arbitration section that purported to cover potential disputes between Purvis and Mar-Jac. Purvis' egg producing operation was insured through Danny Wilks Insurance Agency LLC and its successor company, Southern Insurance Group LLC.[3]

¶3.     On April 1, 2017, one of Purvis' buildings caught on fire and was totally destroyed. Purvis' breeding equipment and Mar-Jac's birds were all included in the loss. Purvis claimed that after the fire on April 1, Mar-Jac sent an electrician to his operation to make necessary repairs so that the remaining building could be "put back in operation." According to Purvis,

---

[2] While the contract was signed on and dated December 14, 2016, the body of the contract stated that its effective date is December 13, 2016.

[3] Both Danny Wilks Insurance Agency LLC and Southern Insurance Group LLC were listed as party defendants in Purvis' complaint dated March 25, 2020.

he was not satisfied that the electrician's repairs were sufficient to safely return the remaining building to production. Purvis claimed there were electrical hazards that still remained after the alleged repairs. Several days later, on April 6, 2017, Purvis' second building caught on fire and resulted in a total loss. Purvis subsequently discovered that only his buildings were covered by the insurance policy and not the building's contents including the birds and breeding equipment and machinery.

¶4.    On July 28, 2017, Purvis sent a letter to Mar-Jac, presenting a demand for arbitration pursuant to the Contract signed on December 14, 2016.[4] On September 8, 2017, Mar-Jac sent a letter in response to Purvis' letter. The contents of Mar-Jac's response letter will be discussed further in the analysis below. Neither party initiated arbitration as a result of their correspondence in 2017; therefore, arbitration did not take place at that time.

¶5.    Purvis filed a complaint for negligence on March 25, 2020, against Danny Wilks Insurance Agency LLC, Southern Insurance Group LLC, Danny Wilks (individually), Mar-Jac, and R and L Poultry Services Inc. d/b/a The Agri-Business Store. Purvis' complaint requested compensation for the contents of his buildings that were lost in the fire and for loss of income. Further, Purvis requested punitive damages against Mar-Jac. On August 14, 2020, Mar-Jac filed an answer, which included an affirmative defense regarding arbitration, and a counterclaim against Purvis. On that same day, Mar-Jac filed a "Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay Proceedings" pursuant to the Contract

---

[4] The letter dated July 28, 2017, is not a part of the record on appeal; however, it is referenced in a response letter from Mar-Jac dated September 8, 2017, which is included in a supplemental volume of the appealate record filed on June 28, 2021.

between Mar-Jac and Purvis.

¶6. On November 9, 2020, the circuit court held a hearing on Mar-Jac's motion to compel arbitration. After considering arguments from counsel, the court entered an order granting the motion on December 2, 2020. Aggrieved by the circuit court's ruling, Purvis appealed.

## STANDARD OF REVIEW

¶7. "In reviewing an appeal of an order compelling arbitration, we review the trial judge's factual findings under an abuse-of-discretion standard, and we conduct a de novo review of all legal conclusions." *Virgil v. Sw. Miss. Elec. Power Ass'n*, 296 So. 3d 53, 59 (¶11) (Miss. 2020).

## ANALYSIS

¶8. Purvis argues four main issues on appeal in support of his claim that the trial court erred in granting Mar-Jac's motion to compel arbitration. We address each issue below.

### I. Waiver of Right to Arbitrate

¶9. Purvis' primary argument on appeal is that Mar-Jac waived its right to arbitration by virtue of its response to Purvis' written demand for arbitration dated July 28, 2017. Mar-Jac's response, dated September 8, 2017, stated in part:

> I am writing to you as General Counsel of Mar-Jac MS, LLC (Mar-Jac) in response to your letter dated July 28, 2017 wherein you presented a demand for arbitration under the Grower Contract dated December 13, 2016 by and between Kenneth Purvis, d/b/a Purvis Farms and Mar-Jac.
>
> First of all, **please note that this demand for arbitration was not delivered in accordance with the contract, which requires notice and service within 120 days of when the alleged claim was known or should have been known**. According to your letter, Mr. Purvis states Mar-Jac's actions between April 1, and April 5, 2017, were the proximate cause of Mr. Purvis' alleged

4

damages. Mar-Jac did not receive your notice until August 15, 2017, which is 132 days from April 5, 2017.

(Emphasis added). Purvis argued that the letter constituted a refusal to arbitrate and, along with Mar-Jac's subsequent actions, was ultimately a waiver of arbitration.

¶10. "When a commercial transaction involving interstate commerce includes an agreement to arbitrate disputes, federal law controls the enforcement of the arbitration agreement." *MS Credit Ctr Inc. v. Horton*, 926 So. 2d 167, 173 (¶14) (Miss. 2006). The controlling federal law is known as the Federal Arbitration Act (FAA), 9 U.S.C. § 1.[5] "When Congress enacted the FAA, its purposes were to establish a broad 'federal policy favoring arbitration,' and to require courts to 'rigorously enforce agreements to arbitrate.'" *MS Credit Ctr.*, 926 So. 2d at 173 (¶15). "[W]hen the party seeking arbitration has included a demand for arbitration in its answer, . . . the burden of proof then falls even more heavily on the party seeking to prove waiver." *Univ. Nursing Assocs. PLLC v. Phillips*, 842 So. 2d 1270, 1276 (¶17) (Miss. 2003).

¶11. While the arbitration provision provides that either party can demand arbitration, it does not give either party the right to refuse arbitration. In fact, the Contract specifically provides that the "[f]ailure by either party to participate in the arbitration process shall preclude that party from objecting to the arbitration proceedings." Accordingly, Mar-Jac's alleged "refusal" to arbitrate in its letter did not prevent Purvis from initiating arbitration through the American Arbitration Association (AAA). The Contract clearly stated that "all claims between Mar-Jac and contract grower . . . **shall** be submitted to binding arbitration."

---

[5] As a part of their Contract, the parties agreed that the arbitration provisions contained in the contract "shall be governed by and be enforceable under" the FAA.

5

(Emphasis added). Because the parties never agreed to a single arbitrator as further provided by the Contract, the only remaining avenue to facilitate mandatory arbitration was to make a demand with the AAA. The Contract also provided that should either party initiate arbitration proceedings through the AAA, Mar-Jac was responsible for paying the initial filing fee. Between the dates of September 8, 2017, and August 14, 2020, neither party filed a demand for arbitration with the AAA or sought to have an arbitrator appointed. To state that Mar-Jac refused to participate in arbitration was premature because a demand with the AAA was never filed. Whether Mar-Jac would have actively participated in the arbitration process had Purvis initiated proceedings is purely speculative.

¶12. Further, neither arbitration proceedings nor litigation had commenced at the time Mar-Jac sent its response letter to Purvis. In *Highlands Wellmont Health Network Inc. v. John Deere Health Plan*, 350 F.3d 568, 574 (6th Cir. 2003), the court held that a letter sent during pre-commencement negotiations amounted to "nothing more than the typical posturing that may occur where one party is attempting to 'stare down' the other party in the hope that the other party will simply give up." In that case, John Deere's letter specifically and unequivocally stated that it declined to agree to arbitration or other alternative dispute resolution. *Id*. In the case at hand, Mar-Jac's letter did not assert that it would not participate in arbitration. Mar-Jac did state, however, that it reserved its "right under the contract and under the law . . . ." One such "right under the contract" was arbitration.

¶13. Finally, Purvis argues that Mar-Jac waived arbitration by filing an answer and counterclaim and actively participating in litigation. We disagree. In *MS Credit Center*, 926

6

So. 2d at 179 (¶39), the Mississippi Supreme Court held that arbitration may be waived when a party "actively participates in a lawsuit or takes other actions inconsistent with the right to arbitration." However, although participation in litigation is "an important factor to be considered, more is required to constitute a waiver." *Id.* In *General Guaranty Insurance Co. v. New Orleans General Agency Inc.*, 427 F.2d 924, 929 (5th Cir. 1970), the Fifth Circuit Court of Appeals stated that New Orleans General Agency Inc. (NOGA) did not waive its right to arbitration by filing an answer and counterclaim but was rather "protecting its right to claim unarbitrable damages if the second agreement was effectual." The court went on to state that all of NOGA's actions were

> consistent with orderly participation in the lawsuit. They are things which had NOGA failed to do the court might well have directed it do in the interest of management of the case. NOGA lost no rights by doing them.

*Id.* Further, in *Williams v. Cigna*, 56 F.3d 656, 661 (5th Cir. 1995), Cigna removed the action to federal court, filed a motion to dismiss, filed a motion to stay proceedings, answered the Plaintiff's complaint, asserted a counterclaim, and exchanged discovery. Despite all of Cigna's actions, the court held that "Cigna did not 'substantially invoke the judicial process' and waive its right to seek arbitration." *Id.* at 662.

¶14.    Mar-Jac's counterclaim specifically stated at the outset that it expressly reserved its right to compel arbitration. Further, Mar-Jac filed a motion to compel arbitration simultaneously with its answer and counterclaim. Mar-Jac did not delay in filing its motion to compel arbitration and did not participate in any discovery or depositions or file any additional pleadings within the litigation initiated by Purvis. At the onset of litigation, Mar-

7

Jac made known its preference for arbitration by virtue of its response pleadings and Purvis did not suffer from any undue delay or additional litigation expenses as a result of Mar-Jac's request.

¶15. Given the facts in the record, none of Mar-Jac's actions or inactions constituted a waiver of its right to arbitration. Therefore, Purvis' argument that Mar-Jac waived arbitration is not convincing.

## II. Statute of Limitations

¶16. Purvis raises the issue that Mar-Jac attempted to alter the statute of limitations for claims under the contract. The Contract provides, in part:

> **EITHER PARTY SHALL DEMAND ARBITRATION IN WRITING WITHIN ONE HUNDRED TWENTY (120) DAYS AFTER THE ALLEGED CLAIM WAS KNOWN OR REASONABLY SHOULD HAVE BEEN KNOWN BY SERVING A COPY OF THE WRITTEN DEMAND TO THE OTHER PARTY. . . .**

As already discussed in the paragraphs above, Mar-Jac's 2017 letter pointed out that Purvis' request was not delivered within 120 days as required by the contract. Mar-Jac's letter went on to state:

> Furthermore, Mar-Jac notes several factual inaccuracies in your **claim**, including the allegations that 1) the electrician on site was hired or otherwise engaged by Mar-Jac; 2) that the electrician was somehow unqualified; 3) that "sparks were shooting out from electrical devices in the unburned house;" and 4) that failing to remove the remaining chickens from the undamaged house constituted an **act of negligence**. As explained to Mr. Purvis, and which should be understood by such an experienced grower, moving the birds at that time would in fact have been negligent and would cause irreparable harm to all parties.

(Emphasis added). Mar-Jac's letter clearly acknowledged Purvis' allegations of negligence.

8

So, whether the 120-day notice period began to run on the date of the second fire, April 6, 2017, or the date of Mar-Jac's letter dated September 8, 2017, it is clear that Mar-Jac's motion to compel arbitration fell outside the 120-day period set forth in the arbitration clause. However, there is no language in the contract that indicated the parties had agreed that if notice of a claim under the contract was not provided within 120 days, the claim would be waived. Instead, the Contract demands:

> **ALL CLAIMS BETWEEN MAR-JAC AND CONTRACT GROWER ARISING OUT OF OR RELATING IN ANY WAY TO THE EXECUTION, TERMINATION, INTERPRETATION AND PERFORMANCE OF THE AGREEMENT AND/OR ITS ADDENDA, AND/OR THE DEALINGS BETWEEN CONTRACT GROWER AND MAR-JAC SHALL BE SUBMITTED TO BINDING ARBITRATION....**

The question arises as to whether the Contract implies that all claims are waived if the opposite party is not notified within the 120-day period.

¶17. Both parties acknowledge in their briefs that Mississippi Code Annotated section 15-1-5 (Rev. 2019) prohibits the altering of a statute of limitations by contract. In the case at hand, that statute of limitations is three years, a far greater time frame than the 120-day restriction imposed by the notice provision of the contract. In *Covenant Health Rehab of Picayune L.P. v. Brown*, 949 So. 2d 732, 739-40 (¶20) (Miss. 2007),[6] the Mississippi Supreme Court stated that "[m]odifications to the statute of limitations cannot be accomplished by contract, and any attempt to do so will be void." To the extent the contractual 120-day notice period contained in the Contract could be interpreted to limit the

---

[6] This opinion was overruled on other grounds by *Covenant Health & Rehabilitation of Picayune LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 701-06 (¶¶18-35) (Miss. 2009).

parties' right to bring a claim for relief, it was a violation of Mississippi Code Annotated section 15-1-5 and is void. In *Russell v. Performance Toyota Inc.*, 826 So. 2d 719, 724-25 (¶20) (Miss. 2002), Russell contended that two sentences within his arbitration agreement violated section 15-1-5. The arbitration agreement in *Russell* stated, in part, "[Arbitration] must be initiated within 180 days after the claim or controversy first arises. Failure to timely initiate arbitration shall constitute a waiver of the claim or controversy." *Id*. While the court in *Russell* did not determine whether the limitation period contained in the arbitration agreement was void pursuant to section 15-1-5, the court held that the remainder of the arbitration agreement was still binding. *Id*. at 725 (¶21). More specifically, the court stated that "Mississippi case law . . . holds that if a court strikes a portion of an agreement as being void, the remainder of the contract is binding."[7] *Id*. In the case at hand, like the *Russell* case, regardless of whether the 120-day notice provision was void as a result of section 15-1-5, the remainder of the contract is binding. Because the contract mandates that all claims **SHALL** be submitted to arbitration, Purvis' statute-of-limitation argument fails.

### III.   Judicial Estoppel

¶18.    Purvis argues that "Mar-Jac should be judicially estopped from asserting the arbitration provision." He claims that the doctrine of judicial estoppel should be applied in this case to prevent Mar-Jac from "achieving an unfair advantage by taking inconsistent positions in litigation, i.e. refusing to arbitrate in 2017 and then in 2020 demanding

---

[7] In fact, the parties' Contract contains a severability clause, which states that "[t]he [p]arties agree that if any of the provisions of the Agreement or its Addenda shall be held void for any reason, the remaining provisions shall continue in full force and effect."

arbitration."

¶19.    In *Clark v. Neese*, 131 So. 3d 556, 560 (¶15) (Miss. 2013), the Mississippi Supreme

Court stated:

> The doctrine of "[j]udicial estoppel is designed to protect the judicial system
> and applies where 'intentional self-contradiction is being used as a means of
> obtaining unfair advantage in a forum provided for suitors seeking justice.'"
> Judicial estoppel arises when one party asserts a position contrary to one taken
> **in prior litigation**.  "Judicial estoppel precludes a party from asserting a
> position, benefitting from that position, and then, when it becomes more
> convenient or profitable, retreating from that position later **in the litigation**."

(Emphasis added).  One of the essential elements necessary to prove judicial estoppel is a

position taken **during litigation**.  In the case at hand, the only position that Mar-Jac asserted

during the litigation favored arbitration. Purvis' argument concerning judicial estoppel is

without merit.

### IV.    Unconscionability

¶20.    Purvis claims that the Contract between him and Mar-Jac is an adhesion contract and

therefore unconscionable.  Purvis claims that the Contract was unconscionable for the

following reasons:

    a.    The Contract was preprinted;

    b.    The Contract did not mention Purvis by name;

    c.    The Contract was drafted by Mar-Jac;

    d.    The Contract was presented to Purvis on a take-it-or-leave-it basis; and

    e.    The Contract sought to limit Purvis' recovery of damages.[8]

_____

    [8] Purvis argues for the first time on appeal that the arbitration agreement limits his
recovery of damages.  "It is a long-established rule in this state that a question not raised in

11

Purvis claims that he was the weaker party without even a high school education, and as such there was a clear disparity in sophistication between the parties.

¶21.    In *Mississippi Credit Center*, 926 So. 2d at 177 (¶29), the Mississippi Supreme Court stated:

> This Court has defined unconscionability as "an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." Courts have held agreements to be substantively unconscionable where they are "one-sided and one party is deprived of all the benefits of the agreement or left without a remedy for the other party's nonperformance or breach, a large disparity between cost and price or a price far in excess of that prevailing in the market price exists, or the terms bear no reasonable relationship to business risks assumed by the parties." Procedural unconscionability can be proven by showing "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms."

(Citations omitted).

¶22.    Notably, in the case at hand, all the terms in the arbitration clause were equally applicable to both parties. No one party had any advantage or disadvantage in the arbitration process. The only distinction made between the parties was that Mar-Jac was obligated to "pay (or reimburse contract grower) the AAA's initial filing fee associated with either party filing an arbitration demand." Other than that singular provision, which notably benefitted Purvis, both parties were on equal footing as to arbitration. The arbitration provision in the Contract was capitalized, bolded, and underlined—the very antithesis of inconspicuous print.

---

the trial court will not be considered on appeal." *City of Hattiesburg v. Precision Const. LLC*, 192 So. 3d 1089, 1093 (¶18) (Miss. Ct. App. 2016). Therefore, Purvis' argument is not proper for appeal.

Further, there is no evidence in the record that would suggest that Purvis lacked knowledge, voluntariness, or time when entering into the Contract with Mar-Jac. As such, no evidence suggests that the arbitration agreement was unconscionable.

## CONCLUSION

¶23. After reviewing the record, we find no abuse of discretion in the circuit court's findings or legal error, and, therefore, we affirm the circuit court's order granting Mar-Jac's motion to compel arbitration.

¶24. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE AND LAWRENCE, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.; McCARTY, J., JOINS IN PART. SMITH, J., NOT PARTICIPATING.**

**WESTBROOKS, J., DISSENTING:**

¶25. I respectfully dissent from the majority's holding that Mar-Jac did not waive its right to seek arbitration. "The right to arbitrate a dispute, like all contract rights, is subject to waiver." *Nicholas v. KBR Inc.*, 565 F.3d 904, 907 (5th Cir. 2009). The Mississippi Supreme Court has held that "waiver may be inferred from the actions and conduct of the parties." *Sanderson Farms Inc. v. Gatlin*, 848 So. 2d 828, 837 (¶23) (Miss. 2003) (quoting *Brent Towing Co. Inc. v. Scott Petroleum Corp.*, 735 So. 2d 355, 359 (¶14) (Miss. 1999)). Despite Mar-Jac's argument to the contrary, its response to Purvis' letter can only be seen as a denial of his demand to arbitrate, and the circuit court abused its discretion by holding otherwise. It logically follows that Mar-Jac cannot deny Purvis' right to arbitration and move to compel

13

arbitration of the same claims nearly three years later. Mar-Jac drafted the subject agreement and was fully aware of its provisions when it rejected Purvis' demand to arbitrate. *See Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So. 2d 954, 964 (¶26) (Miss. 1999) ("Waiver is voluntary surrender or relinquishment of some known right, benefit or advantage . . . .") (quoting Black's Law Dictionary 538 (6th ed. 1990)). Mar-Jac's actions constitute waiver, and Mar-Jac should be precluded from invoking the arbitration provision.

¶26.    The Mississippi Supreme Court has held that arbitration can also be waived where a party undertakes "actions inconsistent with the right to arbitration." *In re Tyco (US) Int'l Inc.*, 917 So. 2d 773, 781 (¶32) (Miss. 2005). Mar-Jac's conduct illustrates multiple instances of action that are not consistent with the right to arbitrate. For example, Mar-Jac's 2017 denial of arbitration was an action inconsistent with the right to arbitrate. Mar-Jac's filing of a counterclaim against Purvis was also an action inconsistent with the right to arbitrate. Mar-Jac's request in its counterclaim for ***the court*** to award various forms of monetary relief was also inconsistent with the right to arbitrate.

¶27.    The Supreme Court has clearly stated that "[i]n Mississippi, a party waives the right to arbitrate when it 'actively participates in a lawsuit or takes other action inconsistent with the right to arbitration.'" *In re Tyco*, 917 So. 2d at 779 (¶27) (quoting *Cox v. Howard, Weil, Labouisse, Friedrichs Inc*., 619 So. 2d 908, 913-14 (Miss. 1993)). "Taking advantage of pre-trial litigation such as answers, counterclaims, motions, requests, and discovery obviates the right to arbitration." *Id.*; *accord Pass Termite and Pest Control Inc. v. Walker*, 904 So. 2d 1030, 1035 (¶15) (Miss. 2004) (holding that when a party is fully aware of the existence

14

of an arbitration clause, but knowingly proceeds to litigation, "that party does so at its own peril . . ."). Admittedly, these cases are factually distinguishable from the instant case because they had proceeded further in the litigation process before a party requested arbitration: in *Cox* the parties had proceeded to trial; in *In re Tyco* arbitration was not requested until over three years after the action was filed; and in *Pass Termite* the litigants were much further along with the litigation process. *See In re Tyco*, 917 So. 2d at 778 (¶24); *Pass Termite*, 904 So. 2d at 1035 (¶14); *Cox*, 619 So. 2d at 910. But the law does not state how far down the litigation path one must travel before it is too late to request arbitration. Instead, the law states only that ***active participation*** in the litigation process acts as a bar to a party later invoking an arbitration provision. *In re Tyco*, 917 So. 2d at 781 (¶32). Mar-Jac waived its right to demand arbitration because its counterclaim constitutes active participation in litigation and is inconsistent with the right to arbitrate. The majority's reliance on *Cigna* is misplaced because it does not point to any bright-line rule about when there is a waiver of arbitration and, more importantly, because federal caselaw is not binding on our state court.

¶28.   Mar-Jac also requested in its counterclaim for ***the court*** to award various forms of monetary relief, which is more involved with the judicial process than arbitration. In *Pass Termite*, 904 So. 2d at 1035 (¶14), the Mississippi Supreme Court held that Pass Termite had committed multiple acts evincing waiver of the right to arbitration—including its request for a jury trial—and noted that "a jury trial is characteristic of the judicial process, not arbitration." Although Mar-Jac did not request a jury trial, by asking the court to award it

15

various forms of monetary relief in its counterclaim, Mar-Jac (like Pass Termite) requested relief via the judicial process rather than the arbitration process. Additionally, from my perspective, this case contains an even stronger argument for waiver than those discussed above because Mar-Jac unequivocally communicated that it did not want to arbitrate. Mar-Jac's denial of Purvis's request to arbitrate is blatantly inconsistent with enforcement of the arbitration agreement and Mississippi law.

¶29. Lastly, I disagree with the majority's opinion that making a demand with the AAA was a condition of the contract. The majority states, "Between the dates of September 8, 2017, and August 14, 2020, neither party filed a demand for arbitration with the AAA or sought to have an arbitrator appointed." And "[t]o state that Mar-Jac refused to participate in arbitration was premature because a demand with the AAA was never filed." The Contract discusses the selection of an arbitrator and indicates that arbitration may be undertaken with or without resorting to the involvement of the AAA. Subsection II of the same paragraph in the Contract states that should a dispute arise, arbitration is to be demanded of the parties to the contract, Purvis or Mar-Jac, for whom addresses are given. Despite the majority's statement to the contrary, there is no provision discussing or requiring submission of "a demand for arbitration with the AAA," nor is any contact information given.

¶30. Because there was no requirement to file an arbitration demand with the AAA, Purvis properly made a demand on Mar-Jac. The letter Purvis sent to Mar-Jac (which Mar-Jac clearly denied) was Purvis's attempt to initiate and participate in arbitration. The majority

16

attempts to circumvent the fact that the contract failed to require a demand be made on the AAA by holding that "Mar-Jac's alleged 'refusal' to arbitrate in its letter did not prevent Purvis from initiating arbitration through the [AAA]." While Mar-Jac's denial of Purvis's request to arbitrate may not have prevented Purvis from contacting the AAA, it did not place an affirmative burden on him to do so.

¶31. "We have repeatedly stated that 'our concern is not nearly so much what the parties may have intended as it is what they said, for the words employed are by far the best resource for ascertaining intent and assigning meaning with fairness and accuracy.'" *Sanderson Farms*, 848 So. 2d at 836-37 (¶20) (quoting *IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So. 2d 96, 104 (¶33) (Miss. 1998)). It would be inherently unfair to grant Mar-Jac the ability to benefit from terms of a contract when Purvis was denied the ability to do the same; thus, Mar-Jac should be estopped from demanding arbitration nearly three years after its denial of Purvis's request for the same.

¶32. For the foregoing reasons, I cannot agree with the majority on this issue.

**McDONALD, J., JOINS THIS OPINION. McCARTY, J., JOINS THIS OPINION IN PART.**

17