# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CA-00429-SCT

*PRIORITYONE BANK*

*v.*

*LAURA FOLKES*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/21/2022 |
| TRIAL JUDGE: | HON. DAVID SHOEMAKE |
| TRIAL COURT ATTORNEYS: | ORVIS A. SHIYOU, JR. |
| | DEREK ANDREW HENDERSON |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DEREK ANDREW HENDERSON |
| ATTORNEY FOR APPELLEE: | ORVIS A. SHIYOU, JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 10/05/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Laura Folkes sued PriorityOne Bank (PriorityOne) in chancery court, seeking to set aside a foreclosure on the ground that it had been conducted in bad faith. PriorityOne appeals the chancellor's denial of its motion to compel arbitration. On the extremely narrow legal issue and relevant facts before us on appeal, we affirm the chancellor's ruling.

## FACTS

¶2.     In 2019, PriorityOne made a loan via a line of credit to Folkes, secured by a deed of trust on a commercial tract of real property on Highway 49. Folkes filed for bankruptcy in February 2020. PriorityOne foreclosed on the property after Folkes defaulted on her payment

obligations under the bankruptcy agreement.[1] Prior to the foreclosure, Folkes's bankruptcy trustee made one payment in the amount of $9,394 to PriorityOne, which was credited to the loan. This was the only payment made on the loan. Following the foreclosure, PriorityOne sold the property to Steven Adams.

¶3. In February 2021, Folkes filed a complaint in chancery court alleging that the foreclosure was made in bad faith because the bank had accepted a "substantial payment" toward the debt prior to foreclosure. The original complaint alleged in relevant part:

> 8.  Prior to the foreclosure, the Plaintiff made a substantial payment toward the indebtedness owed to the Defendant, which the Defendant accepted. (See Exhibit "B" hereto)
>
> 9.  By accepting the funds tendered on behalf of the Plaintiff, the Defendant modified the terms of the debt and thereby rendered its escalation of the note moot. Such action should have halted the foreclosure, though it did not.
>
> 10. By accepting the payment as shown in Exhibit "B", the Defendant acted in bad faith in continuing with the foreclosure.

The prayer for relief asked the court to "determine [that] the foreclosure attempted by the Defendant . . . was improper, and completed in bad faith and [un]fair dealing, and that as a result thereof will hold the foreclosure null and void and will enter its order setting the same aside."

¶4. PriorityOne answered the complaint and eventually filed a motion for summary judgment. The bank argued that it was entitled to judgment as a matter of law because, when the default was within borrower's control, the duty of a good faith claim does not apply to

---

[1] Folkes filed various emergency motions in bankruptcy court seeking to stop the foreclosure, all of which were denied.

default-type acceleration clauses. ***Peoples Bank & Tr. Co. v. Cermack***, 658 So. 2d 1352, 1357-1358 (Miss. 1995), *overruled on other grounds by **Adams v. U.S. Homecrafters, Inc.**,* 744 So. 2d 736, 816 (Miss. 1996). The chancellor never ruled on this motion.

¶5.     In July 2021, Folkes filed a complaint and later an amended complaint in circuit court against PriorityOne, PriorityOne employee Harvey Lott, Steven Adams, and 5-A Properties, LLP. Excerpts from the circuit court amended complaint include the following allegations:

12.     Either the Defendant, Steven Adams, individually or 5-A Properties LLP, purchased the property from the Defendant, PriorityOne Bank through the efforts and arrangements of Harvey Lott, as an employee and agent of . . . PriorityOne Bank . . . .

13.     Either sometime before the alleged foreclosure or thereafter, the Defendant, Harvey Lott, disclosed to the Defendant, Steven Adams, the Plaintiff's confidential financial information in violation of federal banking laws and to the detriment of the Plaintiff.

14.     The Defendant, Steven Adams . . . disclosed the information, publicly to the public humiliation, ridicule and detriment of the Plaintiff.

15.     The Defendant, Steven Adams, and Harvey Lott tortiously, invaded the privacy of the Plaintiff by using and/or disclosing the private information of the Plaintiff in violation of federal banking law.

. . . .

16.     The Defendant, Harvey Lott . . . along with Steven Adams on behalf of 5-A Properties LLP or individually, committed civil conspiracy by . . . . conspiring together to purchase the Plaintiff's property at a price for far less than the true market value of the property through an "insider deal."

. . . .

18.     The Defendants . . . purchased the Plaintiff's property at far below the property's fair market value from the Defendant PriorityOne Bank,

which resulted in the loss of the Plaintiff's property far below its market value and causing damages to her private business.

Folkes's demand for relief asked the circuit court to determine that the foreclosure:

was improper, and completed in bad faith and unfair dealings. Therefore this court should award damages to the Plaintiff in an amount sufficient to compensate her for her damages.

Folkes additionally requested punitive damages and that "the corporate veil" be pierced so that Lott and Adams could be held personally liable for their alleged tortious actions.

¶6. In May 2022, the circuit court ordered that case to arbitration.

¶7. In the chancery court proceeding, and with PriorityOne's motion for summary judgment pending, Folkes was granted permission to amend her complaint. The original assertions pertaining to PriorityOne's acceptance of the payment remained verbatim, but the expanded complaint added the following:

6. Either sometime before the alleged foreclosure or thereafter, Harvey Lott, President of PriorityOne Bank in Collins, individually and/or acting within the course and scope of his employment with the Defendant, PriorityOne Bank, disclosed to a third party, the Plaintiff's confidential financial information in violation of the law and to the detriment of the Plaintiff.

7. The Defendant, Harvey Lott, and the third party colluded to allow the third party to purchase the property of the Plaintiff and to deprive her of the same on an "insider deal" at a price far less than the true market value of the property, all to the detriment of the Plaintiff. Further, their collusion was for the third party to purchase the property at a value far less than the true fair market value therof, again, to the detriment of the Plaintiff . . . .

The prayer for relief to set aside the foreclosure on equitable grounds remained the same and was not expanded. PriorityOne moved to compel arbitration and to dismiss on multiple

4

grounds, including impermissible claim splitting and failure to join the current owner of the property to the litigation.

¶8. Following a hearing, the chancellor denied PriorityOne's motion to compel arbitration, noting that chancery court is a court of equity and finding that Folkes "has established a prima faci[e] case showing that some impropriety may have occurred at or around the time of the foreclosure on her property that demands that she be given the opportunity to prove her case." The court also summarily denied the other motions but without providing a detailed analysis in its order. The transcript of the hearing contains the following exchange related to joinder:

> THE COURT: Tell me how the Chancery Court can set aside a foreclosure on a piece of property when the property owner is not joined in the lawsuit?
>
> [ATTORNEY]: We will be glad to join them in, Your Honor, if the Court would like for us to. But at the time that we filed this—
>
> THE COURT: But without the joinder, how can the Chancery Court basically divest title from the owner and set aside the foreclosure?
>
> [ATTORNEY]: I think there would be some difficulties there . . . .

¶9. PriorityOne appealed directly the denial of arbitration and petitioned for interlocutory appeal of the denial of its motions to dismiss on the grounds of claim splitting and joinder. A panel of this Court denied the petition for interlocutory appeal.[2] Therefore, the only issue

---

[2] The parties' briefs initially reflected confusion over the scope of issues before the Court on appeal. Both parties subsequently represented to the Court that the scope of this appeal is properly limited to the denial of arbitration. Folkes's motion to dismiss the appeal is therefore denied. We further grant PriorityOne's motion asking this Court to take judicial notice of the circuit court's order moving Folkes's circuit court action to arbitration.

5

before us is whether to affirm or reverse the chancellor's denial of PriorityOne's motion to compel arbitration.

**DISCUSSION**

¶10.    We review the grant or denial of a motion for arbitration under a *de novo* standard. ***Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney***, 950 So. 2d 170, 173 (Miss. 2007). This Court conducts a two-pronged analysis in determining whether an arbitration clause is enforceable. ***E. Ford, Inc. v. Taylor***, 826 So. 2d 709, 713 (Miss. 2002). First, (1) is there a valid agreement to arbitrate the claims, and (2) does the dispute in question fall within the scope of that arbitration agreement? ***Id.*** The second prong includes an inquiry into whether any contract defenses are available under state law to invalidate the arbitration agreement. ***Id.*** "This Court employs ordinary principals [sic] of contract law to determine whether a valid arbitration agreement exists." ***Carrick v. Turner ex rel. Walley***, 298 So. 3d 1006, 1012 (Miss. 2020) (citing ***Harrison Cnty. Com. Lot, LLC v. H. Gordon Myrick, Inc.***, 107 So. 3d 943, 950 (Miss. 2013)). "If a contract is unambiguous, a court must apply the plain meaning." ***Id.*** (citing ***H. Gordon Myrick Inc.***, 107 So. 3d at 960)).

¶11.    "A party may waive the right to compel arbitration where it actively participates in litigation or takes other actions inconsistent with the right to compel arbitration which substantially invoke the judicial process to the detriment or prejudice of the other party." ***H. Gordon Myrick, Inc.***, 107 So. 3d at 953 (citing ***In re Tyco Int'l Inc. v. Tyco Int'l (US) Inc.***, 917 So. 2d 773, 779-80 (Miss. 2013)). The right to arbitrate is waived when a party requesting arbitration has "'participated in almost every aspect of litigation' and made 'extensive use of various modes of pre-trial litigation.'" ***In re Tyco Int'l Inc.***, 917 So. 2d at

6

781 (quoting ***Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.***, 619 So. 2d 908, 913 (Miss. 1993)). "Taking advantage of pre-trial litigation such as answers, counterclaims, motions, requests, and discovery obviates the right to arbitration." ***Cox***, 619 So. 2d at 14 (citing ***Cornell & Co. v. Barber & Ross Co.***, 360 F.2d 512, 513 (D.C. Cir. 1966); *see also **MS Credit Ctr., Inc. v. Horton***, 926 So. 2d 167 (Miss. 2006).

¶12.   Here, the arbitration clause found in the Commercial Line of Credit Agreement and the identical clause in the Deed of Trust drafted by PriorityOne provide in full:

> ADDITIONAL PROVISIONS. ARBITRATION. Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. **Nothing in this note shall preclude any party from seeking equitable relief from a court of competent jurisdiction.** The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision. This arbitration provision shall not be applicable and is not enforceable against any covered

borrower or against any person who was a covered borrower under the Military Lending Act when the agreement was made.

(Emphasis added.) Folkes argues that the arbitration agreement has an express exception for equitable claims and that, regardless, PriorityOne waived any right to arbitrate by participating substantially in litigation.

¶13. PriorityOne does not seem to dispute that it participated substantially in litigation of the original complaint, including answering the complaint, participating in discovery, litigating a motion for summary judgment, and indicating that it was ready for trial. *See Horton*, 926 So. 2d at 179; *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719 (Miss. 2002). It argues, however, that the amended complaint triggered the applicability of the arbitration clause by adding new causes of action, and, therefore, the bank's participation in the litigation up to that point should not be counted against it in a waiver analysis. It also argues that Folkes's original complaint was not adopted or incorporated by reference in the amended complaint and therefore "the original pleading no longer performs any function in the case . . . ." *Sledge v. Grenfell Sledge & Stevens, PLLC*, 263 So. 3d 655, 661 (2018) (internal quotation mark omitted) (quoting 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1476 (3d ed. 2018)).

¶14. Folkes insists that the amended complaint did not add new causes of action. Instead, she represents that it merely added factual context supporting her original and continued equitable claim that the decision to foreclosure was not made with good faith and fair dealing. Unlike her circuit court complaint, the amended chancery court complaint does not allege the torts of civil conspiracy and invasion of privacy. Nor does it request tort damages.

Identical to the original complaint, the relief sought is for the court to set aside the foreclosure and declare the trustee's deed transfer null and void. The original complaint also does not appear to have been formally dismissed by the chancery court.

¶15. On the specific circumstances before us, we agree with Folkes that PriorityOne waived any right it may have had to compel arbitration by substantially participating in litigation and that Folkes is bound by her representation to this Court that the amended chancery complaint did not and was not intended to add discrete claims to her chancery action. Much remains undetermined in this case. It is unclear whether the bank's acceptance of the trustee's payment could constitute bad faith sufficient to set aside the foreclosure, or whether the bank's alleged collusion with the ultimate purchaser of the property could impact this analysis. The chancellor also raised the question of how a foreclosure could be set aside in the absence the current owner of the property as a party. Additionally, Folkes's attempt to prosecute two similar cases in chancery and circuit court implicates claim-splitting concerns.

¶16. But with none of those questions squarely before this Court, we affirm the chancellor's denial of PriorityOne's motion to compel arbitration. By participating extensively in litigation to the point of filing a motion for summary judgment, PriorityOne waived any right to arbitrate Folkes's equitable chancery court claim that the foreclosure was made in bad faith and should be set aside. Folkes is bound by her representation to this Court that the amended complaint was not intended to add discrete causes of action.[3]

---

[3] The dissent would construe the amended complaint as adding nonequitable claims and thus triggering the arbitration provisions. But here we make clear that on remand the scope of the chancery claims have not been expanded to include the nonequitable causes of action that the circuit court ordered to arbitration. As discussed above, we fully

9

¶17.    Because we find that PriorityOne waived any right to compel arbitration, it is not necessary for us to construe whether the clause "[n]othing in this note shall preclude any party from seeking equitable relief from a court of competent jurisdiction" operates to exclude Folkes's equitable claim from the arbitration provisions.[4]

## CONCLUSION

¶18.    We affirm the chancellor's denial of PriorityOne's motion for arbitration. The bank waived any right it may have had to compel arbitration by substantial participation in the litigation, and its waiver was not obviated by Folkes's amended complaint.

¶19.    **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, CHAMBERLIN AND ISHEE, JJ., CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BEAM, J.**

**GRIFFIS, JUSTICE, DISSENTING:**

¶20.    Because the chancellor erroneously denied PriorityOne Bank's motion to compel arbitration, I respectfully dissent.

¶21.    The majority finds that "[b]y participating extensively in litigation to the point of filing a motion for summary judgment, PriorityOne waived any right to arbitrate [Laura] Folkes's equitable chancery court claim that the foreclosure was made in bad faith and

---

acknowledge the valid concern that litigation related to one foreclosure is proceeding in two different courts; but this concern relates to claim splitting, which is not before us on this appeal from the order denying arbitration. *See* Diss. Op. ¶ 27.

[4] The dissent's analysis of this clause does not adequately acknowledge or address Folkes's standing equitable claims. Instead it continues to focus on Folkes's non-equitable tort claims. *See* Diss. Op. ¶¶ 24-26. The scope of our review on appeal is limited to consideration of Folkes's equitable claims.

should be set aside." Maj. Op. ¶ 16. But as the record reflects, all of PriorityOne's participation came before the amended complaint was filed. While it is true that PriorityOne participated in litigation by answering the complaint and filing for summary judgment, the summary judgment was based on the original complaint and was never heard because Folkes filed her amended complaint. And as discussed in more detail below, the amended complaint triggered the arbitration provisions. Once Folkes filed her amended complaint, PriorityOne timely moved to dismiss or, alternatively, to compel arbitration.[5] Thus, PriorityOne did not delay in asserting its right to arbitration after the amended complaint was filed, and it did not extensively participate in litigation after the amended complaint was filed.

¶22. The majority further finds:

> Unlike her circuit court complaint, the amended chancery court complaint does not allege the torts of civil conspiracy and invasion of privacy. Nor does it request tort damages. Identical to the original complaint, the relief sought is for the court to set aside the foreclosure and declare the deed transfer null and void.

Maj. Op. ¶ 14. But as PriorityOne notes, Folkes's amended chancery court complaint added two additional claims originally included in her circuit court complaint: (1) disclosure of confidential financial information in violation of the law and to the detriment of Folkes and (2) collusion, deprivation of property, insider dealings, and lack of fair market value all to the detriment of Folkes. It is these claims alleged in the amended complaint that triggered the arbitration provisions.

_____

[5] Folkes's amended complaint was filed November 19, 2021. Two weeks later, on December 3, 2021, PriorityOne filed its motion to dismiss or, alternatively, to compel arbitration.

11

¶23. The arbitration clause applies to "all disputes, claims and controversies . . . including without limitation contract and tort disputes . . . ." Moreover, the arbitration clause applies to "[a]ny disputes, claims, or controversies . . . concerning any collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note . . . ." All of Folkes's claims in the amended complaint are based on the foreclosure sale of the collateral property. Folkes challenges the validity of the foreclosure sale and the conduct of PriorityOne in effecting the foreclosure sale. Thus, the claims unquestionably arise in connection with the commercial line-of-credit agreement and deed of trust, and they fall within the scope of the arbitration provisions therein.

¶24. Because the majority finds that PriorityOne waived its right to compel arbitration, it declines to address whether the arbitration clause has an express exception for equitable claims. Maj. Op. ¶ 17. But because I find the arbitration clause applies, the issue must be considered.

¶25. Under the arbitration clause, no party is precluded "from seeking equitable relief from a court of competent jurisdiction." Based on this language, Folkes argues the arbitration provisions do not apply to her chancery court case. I disagree. As previously discussed, a cursory review of the amended complaint shows Folkes added additional claims, and in her prayer for relief, Folkes asks that the chancellor grant her "any further relief to which she may be entitled upon the evidence to be presented." Moreover, Folkes acknowledged at the hearing that some of the additional facts and allegations set forth in the amended complaint

12

were not "equitable at any juncture." Thus, even Folkes admits that some of her claims are not equitable in nature and are therefore subject to arbitration.

¶26. Additionally, it is important to note that the *circuit* court granted PriorityOne's motion to compel arbitration. In its arbitration order, the circuit court found as follows:

1. On January 10, 2019, Plaintiff executed a Commercial Line of Credit Agreement and Note ("Note") with [PriorityOne], secured by a Commercial Real Estate Deed of Trust ("Deed of Trust").

2. Both the Note and Deed of Trust contained identical arbitration provisions, which provide that "all disputes, claims, and controversies between them whether individual, joint, or class in nature, arising from this Note [or Deed of Trust] or otherwise, including without limitation contract and tort disputes, shall be arbitrated . . . ." The arbitration provisions also require that "any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any collateral securing this Note [or Deed of Trust], including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note [or Deed of Trust], shall also be arbitrated . . . ." Finally, the provisions also acknowledge that the "Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision."

3. Plaintiff filed an Amended Complaint on December 13, 2021. Therein, Plaintiff acknowledges that she entered into the Note and Deed of Trust. Plaintiff asserts several causes of action against Defendants concerning alleged tortious actions or inactions taken by Defendants [Harvey] Lott and [PriorityOne] while exercising [PriorityOne]'s rights under the Note and Deed of Trust, *including the foreclosure of the collateral property*. Plaintiff alleges that Defendant Lott was at all times complained of an employee and agent of the Defendant [PriorityOne Bank] and acting within the course and scope of his employment.

¶27. The circuit court arbitration order is based on the same note, deed of trust, and allegations in the chancery court case. And as the order reflects, all issues including the

13

foreclosure of the collateral property will be addressed in arbitration. As a result, I find it counterproductive to send this case back to chancery court in order for the parties to litigate the same issues that will be arbitrated in circuit court.

¶28. I find Folkes's amended complaint is subject to the arbitration provisions contained in the commercial line-of-credit agreement and deed of trust. Thus, the chancellor's order denying PriorityOne's motion to compel arbitration should be reversed, and this case should be sent to arbitration under the terms of the agreement.

**BEAM, J., JOINS THIS OPINION.**